Dolph v. Maryland Casualty Co.

---

CLIFFORD M. DOLPH v. MARYLAND CASUALTY COMPANY, Appellant.

Division Two, April 7, 1924.

1. **JUDGMENT:** Conclusiveness: Indemnity Insurance. A final judgment between the same parties in a former action is conclusive of

Dolph v. Maryland Casualty Co.

all matters decided by it or that might have been litigated therein, but it is not conclusive of any other fact which it was unnecessary to prove in connection with the matter determined; and where the causes of action are different the judgment is conclusive only of the matters that were in fact litigated in the former action. In an action against the owner of an eight-story building brought by an electrician, who, in an attempt to discover what had caused the south elevator of a shaft to stall, was injured by the descent of the counterweight of the adjoining north elevator, a judgment determining that the negligence of the operator of the north elevator was the cause of the injury was not a decision that an indemnifying accident insurance policy issued to the owner did not cover the south elevator, nor was it necessary to prove any other fact bringing the injury within the terms of the policy, which is the cause of action sued on by said owner in this case.

2. **INSURANCE: Ambiguities in Policy.** Ambiguities in an indemnifying accident insurance policy must be resolved against the insurer, and the insured must be given the benefit of doubtful constructions.

3. ———: ———: **Ordinary Repairs.** An indemnifying policy which does not cover accidents to persons making additions or alterations or extraordinary repairs "except ordinary repairs of such elevator or elevator plant" means that any one making ordinary repairs is covered by the terms of the policy; but if the repairer, in making ordinary repairs on the machinery, or on the plant, is injured, his injury does not come within the terms of the policy against which liability is insured unless it occurs in the manner covered by other terms of the policy.

4. ———: ———: **Shaft: By Reason of.** In a space fifteen or sixteen feet long from north to south and seven or eight feet wide, two elevators, the north elevator and the south elevator, were operated from the first to the seventh floor of a building owned by plaintiff. In the space between the elevators were two counterweights, one for each elevator; each was a little heavier than the elevator it was used to balance, and descended as the elevator ascended. The south elevator was stalled at the first floor, and an electrician got down in the pit to see conditions at the bottom, but before doing so told the operator of the north car not to go to the seventh floor, but stop at the sixth, so that the counterweight would descend only to the second floor; he got into the pit under the north car, and crawled through the space where the counterweight of the north car worked, to get under the south car, and while he was in the space in which the counterweights worked the operator of the north elevator ran it to the seventh floor, and its counterweight

Dolph v. Maryland Casualty Co.

descended on him, and caused an injury for which he recovered a judgment for damages against the owner of the building. A policy issued by defendant insured said owner "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries accidentally suffered by any person while in, or entering, or leaving the south elevator or hoist, or by reason of the existence of the well, shaft, or hoistway of said elevator or hoist, or the appliances, attachments or appurtenances contained therein, or the machinery directly connected therewith," but the policy further recited that it "does not cover accidents to or caused by any person while making additions to, or structural alterations in, or extraordinary repairs upon, any elevator or elevator plant, unless written permission is granted by the company specifically describing the work, except that ordinary repairs of such elevator or elevator plant may be made without such permit." *Held, first,* that there was but one shaft, and the contract cannot be restricted to the south hoistway and appliances therein; *second,* that the injury was caused "by the existence of the shaft," although the negligence of the operator of the north elevator, in permitting its counterweight to descend, was the immediate cause of the injury; and, *third,* the insured having paid the judgment rendered against him in favor of the electrician, is entitled to recover on the indemnifying policy the amount of the judgment on the day he paid it, plus six per cent interest from said date.

5. ———: ———: **Shaft of Elevator: Meaning.** The words of an insurance policy indemnifying the insured against damages recovered by any person injured "by reason of the existence of the well, shaft or hoistway" of an electric elevator must be interpreted in the way in which they are ordinarily understood, and the word "shaft" used in such a contract must be understood as the parties thereto and persons acquainted with such an appliance would understand it; and although there were two electric elevators and a space between them in which the counterweights descended as they ascended, the "shaft" must be interpreted as one shaft where experienced workmen, as shown by their testimony, understood the space occupied by both elevators as one shaft, and not two.

6. ———: ———: **By Reason of: Proximate Cause.** The words "by reason of" used in an insurance policy indemnifying the insured against damages for an injury accidently suffered by any person "by reason of the existence of the well, shaft or hoistway" of an elevator, is synonymous with "on account of" or "in consequence of," and the clause embraces the negligent act of the operator of the elevator in permitting its counterweight to descend upon an electrician who was at work in the shaft, for that was a negligent

Dolph v. Maryland Casualty Co.

act in connection with the "shaft" and the injury would not have occurred unless the operator had made negligent use of the shaft.

7. ——: **Vexatious Delay: Pleading: Conclusions.** In order to warrant the recovery of ten per cent damages and attorneys' fees for the insurance company's vexatious delay in paying the amount of the policy sued on, the petition must contain appropriate allegations of the facts constituting vexatious delay; mere allegations that defendant "has vexatiously and without legal excuse refused to pay, although due demand has been made" and that by reason of such vexatious refusals to pay plaintiff has been compelled to employ attorneys, etc., are mere conclusions, and will not support a judgment for such damages or fees.

8. ——: ——: **Proof: Instruction.** Mere delay is not vexatious; where defendant appears to have acted in good faith, and makes a plausible argument in support of its position that it is not liable at all under the policy, and no fact or circumstance is shown in evidence to warrant an inference that defendant intended vexatiously to delay payment, there can be no recovery of ten per cent damages or attorney's fees for vexatious delay, and an instruction authorizing a recovery thereof is erroneous. But in this case, judgment for the amount of the judgment for damages paid by plaintiff, with interest from date of payment, is allowed to stand, provided he files a *remittitur* of the excess.

---

Headnote 1:   Judgments, 34 C. J. sec. 1322.   Headnotes 2 to 5, and 8:   Liability Insurance:   2, 36 C. J. sec. 14;   3, 36 Cyc. sec. 59;   4, 36 C. J. secs. 59 (1926 Anno), 65;   5, 36 C. J. secs. 14, 59 (1926 Anno); 8, 36 C. J. sec. 73.   Headnote 6:   Liability Insurance, 36 C. J. sec. 51; By, 9 C. J. p. 1110.   Headnote 7:   Liability Insurance, 36 C. J. sec. 73; Insurance, 33 C. J. sec. 887.

Appeal from St. Louis City Circuit Court.—*Hon. Robert W. Hall,* Judge.

AFFIRMED (*upon condition*).

*Holland, Rutledge & Lashly* for appellant.

(1) The court erred in refusing to give the peremptory instruction asked by appellant and refused by the court, to the effect that under the pleadings and evidence in the case the respondent was not entitled to recover and the verdict should be for the appellant. The record in the case of Flori v. Dolph discloses that the sole cause

of the injuries sustained by said Flori was the negligence of the operator of respondent's north elevator in operating the same above the sixth floor of the building, as the result of which the counterweights of the said north elevator descended and struck Flori, whereas the policy of insurance sued upon herein covers solely and refers solely to the south elevator, and provides indemnity only in case anyone is injured while on, entering or leaving the south elevator, or by reason of the existence of the shaft or appliances or machinery directly connected with the south elevator. In this suit respondent seeks to make appellant respond to a judgment rendered against him in the said case of Flori v. Dolph. The record in that case is conclusive as to what was adjudicated therein. And the question as to whether the policy of insurance issued by appellant to respondent covers said suit, and the judgment therein, and the loss sustained by Dolph by reason of paying such judgment, depends exclusively upon whether the said policy covers an accident of the kind disclosed by the record in the suit of Flori v. Dolph. St. Joseph v. Ry. Co., 116 Mo. 636; Strong v. Phoenix, 62 Mo. 289; Robbins v. Chicago, 4 Wall. 657; Kansas City v. Mitchner, 85 Mo. App. 36. (2) The court erred in giving instruction numbered 1. (a) Because the case should not have been submitted to the jury at all, for the reasons above assigned. (b) By said instruction the court declared that if Flori was injured while making ordinary repairs to the south elevator, the respondent was entitled to recover in this case, even though the injuries sustained by Flori were caused by the north elevator being run up so high that the counterweights attached thereto were caused to come down and crush said Flori while he was in the pit of the north elevator. The policy in fact provided solely for indemnity to defendant for loss arising out of injuries sustained by any person while on, entering or leaving the south elevator, or by reason of the existence of the shaft or appliances or machinery directly connected with the south elevator. Following it are certain clauses of limi-

Dolph v. Maryland Casualty Co.

tation, one of them being to the effect that the policy does not cover accidents to persons while making structural changes or extraordinary repairs on any elevator, unless a written permit is given by the defendant specifically describing the work, "except that ordinary repairs of such elevator or elevator plant may be made without such permit. The instruction is erroneous, because said repair clause is one of limitation and not of extension, and the words relative to ordinary repairs merely eliminate them from the limitation. (3) The court erred in giving Instruction 2, by which the jury were told that if they found a verdict in favor of plaintiff, and further believed that the defendant's refusal to pay was vexatious, the jury might allow an additional ten per cent damages for vexatious delay and attorney's fees in this suit. Said instruction is erroneous because: (a) Plaintiff was not entitled to any verdict, much less to an award for vexatious delay. (b) Even if the defendant misjudged the law and the facts in refusing to pay plaintiff's claim, there is no showing in the case that the refusal was not made in good faith. A plaintiff, in order to be entitled to award for alleged vexatious delay, must establish not only a right of recovery, but that the defendant refused to pay his claim without any reasonable or plausible excuse. Where defendant's refusal to pay is based upon a claim or defense which competent and honest persons might reasonably believe to be valid, such refusal to pay upon such ground is not vexatious. Non-Royal Shoe Co. v. Phoenix Assur. Co., 210 S. W. 37; Shockey v. Fidelity Co., 191 S. W. 1049; La Font v. Home Insurance Co., 193 Mo. App. 543; Blackwell v. Am. Central Ins. Co., 80 Mo. App. 75; Weston v. Am. Ins. Co., 191 Mo. App. 282; Patterson v. Insurance Co., 174 Mo. App. 37; Rogers v. Fire Ins. Co., 157 Mo. App. 671; Aufrightig v. Columbian Ins. Co., 249 S. W. 912.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

(1) Every part and all the words of a contract will be considered, and insurance policies are to be liberally construed against the insured and so as to favor the objects which the insured sought to accomplish by taking out the insurance, and, if there is any uncertainty or ambiguity in the language of the policy such a construction will be placed upon the policy as will operate in favor of the insured so as to protect him against loss. Gotfordson v. Accident Co., 218 Fed. 583; Matthews v. Modern Woodman, 236 Mo. 346; Maddox v. Ins. Co., 193 Ky. 38, 22 A. L. R. 1276; Cook v. Ins. Co., 76 Minn. 382; Cassidy v. Taylor, 189 N. Y. Supp. 263. (2) Respondent contends that the appellant is bound by the judgment which was rendered in Flori v. Dolph, in so far as that judgment is concerned, and that that judgment covered all the points of liability of defendant company in this case, but Dolph had the right, and it was his duty, to show further whether: (a) the repairs which Flori was making on the south "elevator or elevator plant" were "ordinary repairs" and (b) the injuries received by Flori, while he was making such "ordinary repairs" resulted to him by reason of the "existence of the well, shaft, or hoistway of said elevator or hoist, or the appliances, attachments or appurtenances contained therein, or the machinery directly connected therewith." Upon the face of Flori's petition it was not necessary for him to have shown these facts, but such were shown and litigated by Flori, by the evidence in that case, and it was proper for Dolph to show these facts and identify them with the Flori Case. City of St. Joseph v. Railway, 116 Mo. 636; Gotfordson v. Accident Co., 218 Fed. 586. (3) Dolph having given the Maryland Casualty Company notice of the injury and notice of the suit of Flori against Dolph, and having made demand on the company to come in and defend that suit, and it having refused to come in and defend the suit, it is bound by the judgment in that case. That judgment is conclusive in so far as it goes.

City of St. Joseph v. Railway, 116 Mo. 636; Roth Tool
Co. v. Ins. Co., 161 Fed. 709; Ry. Co. v. News Co., 151
Mo. 375; St. Louis Dress Beef Co v. Ins. Co., 201 U. S.
173; N. Y. Ry. Co. v. Mass. B. & I. Co., 184 N. Y. Supp.
246. Not only is the defendant bound by the judgment
in Flori v. Dolph, but it is liable in this action for the rea-
sonable costs and expenses and attorney's fees incurred
by Dolph in that case. City of Astoria v. Railroad Co.,
49 L. R. A. (N. S.) 404. The defendant company express-
ly agrees to defend the Flori v. Dolph suit, for it, by its
policy, agrees to "defend all suits, even if groundless."
(4) The policy does not limit its covering clauses to
the south elevator, or to that portion of the "well, shaft
or hoistway" in which the south elevator is located, or
to such "appliances, attachments or appurtenances" as
may be contained in that portion of the "well, shaft or
hoistway" as may contain such "appliances, attachments
or appurtenances," but it includes (a) "elevator plant,"
(b) "the well, shaft or hoistway" of such elevator and
the "appliances, attachments or appurtenances contained
therein" and (c) "the machinery directly connected there-
with, meaning thereby all "machinery" directly con-
nected with the "well, shaft or hoistway," etc. Gotferd-
son v. Accident Company, 218 Fed. 583. (5) "Appur-
tenances" alone, without the use of "elevator plant,"
the "well," "shaft" or "hoistway," or "appliances,"
"attachments," or the "machinery" "connected" with
the word "therein" thereby referring to such "well,"
"shaft," etc., has a comprehensive embrace, much more
extensive than the meaning appellant seeks to put upon
that policy. "Appurtenances," by its use and meaning, is
held to be much more than an "annex" to the south ele-
vator. Carpenter v. Leonard, 5 Minn. 155; McLaughlin
v. Johnson, 46 Ill. 163; Goodrich v. Jones, 2 Hill, 142;
Rilpey v. Page, 12 Vt. 353. (6) It was for the jury to
say, upon all the facts, whether the company was justi-
fied in its refusal to pay. There is here no untried or
unapproved rule of law involved. Stix v. Travelers Ins.
Co., 175 Mo. App. 171; Keller v. Ins. Co., 198 Mo. 454.

WHITE, J.—The suit is upon a liability accident policy. The policy insured the plaintiff in the sum of ten thousand dollars "against loss from the liability imposed by law upon the Assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any person or persons while in, or entering, or leaving the car of any elevator or hoist described in the Schedule below, or by reason of the existence of the well, shaft, or hoistway of the said elevator or hoist, or the appliances, attachments, or appurtenances contained therein, or the machinery directly connected therewith; provided such bodily injuries or death are suffered as a result of accidents occurring within the period of twelve months."

The schedule mentioned is as follows:

"SCHEDULE

| Location of Building Where Elevator is Situated | Location in Building | Number of Elevator | Kind | Maker and Power Used | Number of Landings | Premium per Elevator |
|---|---|---|---|---|---|---|
| Northeast Corner 7th and Locust St., St. Louis, Mo. | Central | One | Passenger | Otis-electric | 8 | $52.50 |

"This policy covers south passenger elevator, west side of corridor."

The policy also contains the following provision:

"This policy does not cover accidents to or caused by any person while making additions to, or structural alterations in, or extraordinary repairs of, any elevator or elevator plant, unless a written permit is granted by the company specifically describing the work; except that ordinary repairs of such elevator or elevator plant may be made without such permit; but no elevator may be used for any service while additions, alterations, or repairs of any kind are being made to such elevator or its equipment."

The petition alleges that in plaintiff's building, known as the Dolph Building, two elevators were oper-

ated in a shaft from the first floor to the seventh floor of the building; that the south elevator became out of order, and one Joseph J. Flori proceeded to examine it, to learn the cause of that elevator's failure to operate, and while in the pit or in the shaft on the ground floor, making such examination, the north elevator ascended to the seventh floor, causing its counterweight to descend upon and injure Flori; that Flori thereafter sued the plaintiff for damages on account of such injuries, and February 17, 1914, recovered judgment in the sum of $12,500; that the plaintiff here appealed said suit to the Supreme Court, in which court the said judgment was affirmed February 20, 1917. [Flori v. Dolph, 192 S. W. 949.] Dolph afterwards paid said judgment, amounting with interest and costs, to $14,820.82.

It is further alleged that the plaintiff was obliged to employ attorneys to defend said suit at a cost of five hundred dollars, and to pay ten dollars' docket fee in the Supreme Court, and that the defendant has refused to pay any of said sums, vexatiously and without legal excuse. Judgment is asked for the sum of $10,606.05 and interest at six per cent from March 21, 1917, to the date of the judgment, and for reasonable attorneys' fees, and ten per cent additional for vexatious delay.

In answer the defendant alleged that the policy of insurance covers only the south elevator shaft and pit, and that the injury was caused by the operation of the north elevator. This defense which turns upon a construction of the policy will be noticed fully below.

It is further alleged in the answer that the judgment in the case of Flori against Dolph, and the affirmance of the same by the Supreme Court, adjudicated the matter as to the cause of Flori's injury, for which Dolph was liable, showing it was not covered by the policy. These points are pressed for consideration here in support of the defendant's claim for reversal.

In defense it is also urged that the court erred in submitting the question of vexatious delay and assessment of the amount paid as attorneys' fees, and ten

per cent in addition to the amount provided for in the policy. This requires a construction of the clause of the policy set out above in the light of the facts shown in the evidence.

The space where the two elevators, the north elevator and the south elevator, were operated from the first floor to the seventh floor, was fifteen or sixteen feet long from north to south, and seven or eight feet wide.

The entrance to each elevator was through a gate on the east side. In the space between the two elevators were two counterweights, one balancing each elevator. A counterweight was described as being about twenty-four inches in width, about five inches thick, and a little heavier than the elevator. The counterweight descended as the elevator ascended, and *vice-versa.* The counterweight on the east balanced the south elevator, and the counterweight on the west balanced the north elevator. In the centre of the space between the two elevators was what is termed a "guide," at the west side, and at the east side of the space were also guides to hold the counterweights in place as they passed up and down. Otherwise the space between the two elevators was open.

Flori was president of the George Flori Machine Company, and working as a mechanic for the Geraghty Brothers Elevator Company. The day he was hurt, August 25, 1913, he was called to the Dolph Building for the purpose of finding out what was wrong with the south elevator. Flori was accompanied by one Eugene Iberius, an electrician, who was to assist him in making the necessary repairs.

Iberius testified that there was one pit or shaft for both elevators, using the expression: "The width of the shaft contained both cars and is about seven feet deep and fifteen feet long."

He described the position and the size of the counterweights, which come up as the cars go down. The two elevators were about ten inches apart. He said: "Both cars are in one shaft along-side of each other."

He said they found the south elevator on the first floor where they were informed it could not be moved. After going to the top of the building and finding no trouble there, they went to the first floor. The witness stood in the door and Flori got down in the pit to see conditions at the bottom of the south car. Before going into the pit they had told the elevator boy not to go to the seventh floor, but to stop at the sixth, so that the counterweight would not come all the way down. Flori got into the pit under the north car, and crawled through the space where the counterweight of the north car worked, to get under the south car. "He crawled down underneath the other car" (the south car) and part of his body was in the space between the two cars where the counterweight works, and the elevator boy ran his car to the seventh floor, allowing the counterweight to come down upon Flori's shoulders and arm, causing the injuries for which he afterwards recovered judgment against Dolph.

Flori testified that there were two elevators in one pit or shaft, and told of the conditions as Iberius had described them. He said he "left Iberius in the doorway and I jumped in the pit and started to crawl in under the south elevator." "I was hit on the shoulder, and this much of my head was at the south end." These two witnesses, Flori and Iberius, were the only witnesses who testified for plaintiff in regard to the situation and the cause of the injuries.

The defendant introduced the judgment and files in the case of Flori v. Dolph, and the record in that case which contained the testimony of Iberius and Flori. Their evidence there in regard to the way the injury occurred did not differ materially from the testimony given in the present case, except that the witnesses did not describe the pit or the shaft in which the elevators were operated. Nothing was said about it, whether it was one shaft or more than one.

The trial resulted in a judgment for plaintiff for $15,840.89, which included attorneys' fees and ten per cent for vexatious delay. The defendant appealed.

303 Mo. Sup.—35

I. The appellant claims that the judgment in the case of Flori v. Dolph, is conclusive as to the issues in this case, and a peremptory instruction directing a verdict for defendant should have been given because the record in that case disclosed that the sole cause of the injuries was negligence of the operator of the north elevator, and the policy sued on covers and refers solely to the south elevator, and therefore the judgment is an adjudication of the rights of the parties here.

Former Adjudication.

The judgment in the case of Flori v. Dolph is conclusive as to the matters decided there and necessary to the determination of the case. It was not necessary in order to recover there for Flori to prove anything except that the injury was caused by the negligence of Dolph's employee in operating an elevator, and he did prove it was done in operating the north elevator. It was not necessary to prove any other fact in connection with the matter. In the case of City of St. Joseph v. Union Railway Company, 116 Mo. 636, where this court had under consideration a liability contract it said, at page 643:

"But the judgment in the prior suit is not conclusive evidence of all matters necessary to be proved by plaintiff in his suit against the indemnitor. Thus the question whether the relation exists which gives a remedy over is, of course, open to inquiry. Again, the judgment in the first suit is conclusive only as to the facts therein established; for the scope of the estoppel created by the first judgment cannot be extended beyond the points and issues necessarily determined by it."

Ordinarily a judgment between the same parties in a former action is conclusive as to all matters which might have been litigated therein, but where the causes of action are different it is only conclusive as to the matters which were in fact litigated therein. [Paper Products Co. v. Life Ins. Co., 204 Mo. App. 1. c. 536, and cases cited.] The judgment in Flori v. Dolph, is

Dolph v. Maryland Casualty Co.

conclusive as to every fact necessarily involved and litigated in that case. It is not conclusive as to any fact not necessary to be proved. While in that case it was necessary to prove that Flori was injured by the descending counterweight of the north elevator, it was not necessary to prove any other fact which would bring it within the terms of the policy sued on here. If additional facts may be proved to show that the injury was caused in such way that the policy protects Dolph from liability on account of it, then evidence of such facts is competent. That brings us to a construction of the policy.

II.     Ambiguities in an insurance contract must be resolved against the insurer, and the insured must be given the benefit of doubtful constructions.

**Ambiguities.**

We will first consider the effect of the second paragraph of the policy quoted above, which provides that the policy does not cover accidents to persons making additions or alterations or extraordinary repairs "except that ordinary repairs of such elevator or elevator plant may be made without such permit."

The respondent claims that that paragraph enlarges the effect of the paragraph first set out. The purpose of this stipulation is to exclude accidents which occur in making repairs, but excepts from the exclusion ordinary repairs. This means only that anyone making ordinary repairs is covered by the terms of the policy, the same as a passenger on the car or anyone who might be injured. A repairer is not in any more favorable position than any other person. If he is making ordinary repairs on the machinery, or on the plant, his injury does not come within the terms of the policy against which liability is insured unless an injury occurs in the manner covered by other terms of the policy.

**Ordinary Repairs.**

III.     The entire liability of the defendant therefore is determined by the effect of this paragraph, set out first above: "against loss from the liability imposed by

law upon the Assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any person or persons while in, or entering, or leaving the car of any elevator or hoist described in the Schedule below, or by reason of the existence of the well, shaft or hoistway of the said elevator or hoist, or the appliances, attachments or appurtenances contained therein, or the machinery directly connected therewith.''

Flori was not injured while in, entering or leaving the car of the south elevator, the one mentioned in the ''schedule.'' His injury does not come within the terms

**Shaft.** of the policy against which the defendant is protected unless he was injured *''by reason of the existence of the well, shaft or hoistway of the said elevator or hoist, or the appliances, attachments or appurtenances contained therein or the machinery directly connected therewith.''* The appellant first argues that there were two shafts, not one, and the contract must be interpreted in connection with the subject to which it applies, the south shaft or hoistway and appliances therein. Now the words of the contract must be interpreted in the way in which they were ordinarily understood. When applied to an object like the *shaft* it must be understood as the parties to the contract and the persons acquainted with it would understand it. The two witnesses, Flori and Iberius, who were acquainted with elevators and their operation, were sent there to make repairs and they understood the space occupied by both elevators as *one* shaft and not two. Throughout their testimony as noted above they called it one shaft, when directly asked about it. There was no attempt on the part of the defendant to show by architects, builders or owners of elevators, or anyone else, that the word ''shaft'' had any other meaning than that attributed to it by these two witnesses. There was no evidence that the parties in making the contract understood it in any other way. The insurance company is presumed to have known the situation when the policy was written. Had it been the intention of the insurance company to restrict the meaning of ''shaft'' to

that part of the opening in which the south elevator was operated, it easily could have done so. Words could have been used which definitely would have fixed that. From the evidence the trial court was justified in finding that, as the term "shaft" was ordinarily understood, there was one shaft in which both elevators operated.

IV. The appellant argues, however, that even if that construction is given to the contract it was not further shown that the injury was caused "by rea-

**By Reason of.** son of the existence of the shaft," etc., because it was caused alone by the north elevator counter-weight.

If we understand appellant's argument it is that the expression, "by reason of" means such shaft or appliances must have been the proximate cause of the injury. Those words must be interpreted in the light of the purpose of the contract, and the particular liability against which Dolph was insured. The insurer undertook to protect him against liability which he would incur on account of injury to someone else. He could not incur liability to another unless there should be an injury caused by some negligence. The negligent *act* of Dolph or someone acting for him must be the cause and the only cause of injury or liability which he was insured against. The mention of shaft, appliance and machinery does not imply that they could cause the injury independent of some negligent act. That is a stipulation describing the condition under which or by means of which the negligent act could take place.

The Supreme Court of Maine in the case of Currier v. McKee, 99 Me. 364, defined the expression. There was a statute which authorized the recovery for injuries incurred "by reason of" the intoxication of any person. The plaintiff was assaulted and injured by a drunken man and brought suit against the person who sold him the liquor. Of course the proximate cause of the injury was the assault, but it was "by reason of" the sale of the liquor, and the ensuing intoxication. That sale created

the condition without which the injury would not have occurred. The expression is held to mean the same thing as "in consequence of" (l. c. 368).

The Supreme Court of the United States, in the case of United States v. William Cramp & Sons Co., 206 U. S. l. c. 127, defined "by reason of" as synonymous with "by virtue of" or "on account of."

So, here, if Dolph should be liable at all for injuries occurring "by reason of" the shaft, appliances, etc., it would be because some negligent act of his or of his employees had occurred in connection with or by the use of the shaft or appliances. Otherwise, there could be no liability "by reason of" such appliances, and the language used in that connection would be meaningless. The appliances, including the counterweights contained in the shaft and the machinery "directly connected therewith," were the occasion of the injury; they were the instruments by which it was done; it was "by reason of" them that the negligent act and the injury were made possible.

For the reasons mentioned the evidence was admissible to show, and did show, the circumstances which brought the injury within the terms of the policy; evidence not necessary to be introduced in the case of Flori v. Dolph.

V. Objections are made to several instructions given on behalf of the plaintiff; some of them because they submitted the case to the jury on the theory that is contended for by the plaintiff, and authorized a verdict on the finding of the facts set up in the petition, and did not take into consideration the contention of the defendant that conclusively there were two elevator shafts. Such instructions were not erroneous.

Instructions.

It was further objected that Instruction 1 authorized recovery without a finding that Flori was injured while making "ordinary" repairs and without a finding that he was injured by reason of the existence of the well shaft, etc. The instruction does require the jury to find the

facts as to what Flori was doing, and the cause of his injury. A finding of these facts was a finding that the injury occurred by reason of the existence of the machinery, etc. That he was making ordinary repairs is not disputed, and the facts conclusively show it.

VI. An instruction authorized the jury if they found that the circumstances surrounding the defendant's refusal to pay was vexatious, without reasonable cause, to allow an additional ten per cent of the amount, together with attorneys' fees. The court also refused the converse of that instruction asked by the defendant.

Vexatious Refusal.

Section 6337, Revised Statutes 1919, provides that if in an action against an insurance company it should appear from the evidence that such company "has vexatiously refused to pay such loss," the court or jury may in addition to the amount thereof, allow the plaintiff damages not to exceed ten per cent, and any reasonable attorneys' fees, and the court may enter judgment for the aggregate sum found in the verdict. It has several times been held by this court that in order to warrant the recovery of ten per cent and attorneys' fees, as provided in that section, there must be appropriate allegations in the petition showing the facts constituting vexatious delay, and such allegations must be supported by proof. [Aufrichtig v. Columbian Nat. Life Ins. Co., 249 S. W. l. c. 916; Shoe Co. v. Assurance Co., 277 Mo. l. c. 420; Fay v. Ins. Co., 268 Mo. l. c. 389; Young v. Ins. Co., 269 Mo. l. c. 21.]

The only allegation in the petition on that subject is as follows: "But the said defendant has vexatiously and without legal excuse refused to pay the same or any part thereof, although due demand has been made upon said defendant to pay the same."

It is further alleged that by reason of the vexatious refusals to pay, plaintiff has been compelled to employ attorneys, etc. This is not an allegation of fact, it is simply a conclusion. Besides, the evidence does not show

any fact, nor are the circumstances such as to warrant an inference that the defendant intended vexatiously to delay payment. In fact the appellant appeared to be acting in good faith and its counsel made a plausible argument in support of its position, so that the instructions authorizing recovery for ten per cent damages and attorneys' fees were erroneous.

The judgment was for $15,840.89, including the attorneys' fees and ten per cent. The amount sued for, including interest on the ten thousand dollars and costs to the date plaintiff paid the Flori judgment, March 21, 1917, was $10,606.05. Judgment was rendered April 28, 1922, five years, one month, and seven days from the time the suit was brought. Six per cent on the above amount for that period, as we figure it, is $3247.59, which added to the principal sum, $10,606.05, would be $13,853.64, the amount for which judgment should have been rendered. This subtracted from the amount of the judgment, $15,840.89, would give $1987.25 in excess of the proper judgment by calculation of the ten per cent damage and the attorneys' fee.

Objections are made to other instructions which are not of sufficient importance to merit further consideration.

If the plaintiff will remit the sum of $1987.25, reducing his judgment as of the date it was rendered, to $13,853.64, and will make such *remittitur* within ten days from the filing of this opinion, the judgment will be affirmed; otherwise, it will be reversed and the cause remanded. All concur.