## GULF PORTLAND CEMENT CO. v. GLOBE INDEMNITY CO.

### No. 11219.

Circuit Court of Appeals, Fifth Circuit.

May 3, 1945.

Rehearing Denied June 6, 1945.

Dwight H. Austin, of Houston, Tex., for appellant.

W. J. Knight, of Houston, Tex., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellee issued to appellant an indemnity policy wherein appellee agreed to pay to the person entitled thereto any sums for which appellant, hereafter called "the Insured," should become liable as damages imposed by law on account of injury or death suffered, or alleged to have been suffered, by any person or persons while at the premises of the cement manufacturing plant of Insured on the "North Side of Ship Channel, near Clinton area, Houston, Harris County, Texas, and elsewhere in the United States of America," if caused by the operation of the work of cement manufacturing. It was a public liability policy and did not cover, generally, employees of the Insured who were engaged in cement manufacturing.

In addition the Insurer agreed to: (a) Make investigations, negotiations, and settlements; (b) defend suits, even if groundless, false, or fraudulent; (c) pay all expenses of investigation and adjustment of claims, all costs taxed against the Insured in legal proceedings, all interest, and all imperative surgical relief expenses, appropriate to the provisions of the policy.

But the policy provided that "this Policy shall not cover * * * bodily injuries or death caused by: * * * (d) work done for the Insured by any independent contractor or sub-contractor; * * *" or "(h) structural alterations in or on buildings, structures and/or elevators, new construction work, excavation work or demolition work, but this exclusion does not apply to the making of ordinary alterations or repairs necessary to the care and maintenance of said designated premises."

Several employees of Ole Peterson were either injured or killed, on the premises of the Insured, when a deadly current of electricity jumped from high tension wires to the pile driver of Peterson on which such employees were working, and this suit presents the question of whether or not the indemnification provisions of the policy protect the Insured against liability for injuries so occurring.

The following facts and legal conclusions seem to be definitely established: (1) Peterson was an independent contractor; (2) the injured men were employees and working for Peterson at the time of their injuries; (3) they were engaged in setting up a pile driver on the premises of the Insured in close proximity to a power line charged with a high voltage of electricity; (4) the pile driver belonged to Peterson and its erection was under his direction and control; (5) the pile driver was being erected by Peterson's crew for the purpose of sinking some test piling in order to ascertain sub-surface data, for the Insured, as to the type of foundation necessary to the construction of a building which it intended to erect at its plant; (6) the injured workmen were invitees of Insured; (7) while the pile driver was being set up by Peterson's crew a current of electricity passed from the power line to the pile driver and into bodies of the men, killing two and injuring others; (8) the power line was used for the purpose of transmitting electric current to the cement plant of Insured for its use in the manufacture of cement; (9) five personal injury suits against the Cement Company resulted, in which the Insured was charged with actionable negligence in: (a) Failing to warn of danger of working in close proximity to the high tension line; (b) failing to cut off the current; (c) failing to request Power Company to cut off current; (d) failing to have a competent electrician present to warn deceased and other crew members of danger of erecting the pile driver too close to high tension line; (e) failing to have spe-

cial insulation around the wires while pile driver was being erected or working near said wires.

The Insurer was notified of the accident, made an investigation, denied coverage, refused to defend the suits, or to pay the expenses of such suits or to reimburse Insured for sums paid out in the ultimate settlement of these suits, although it admits that the sums so expended were reasonable. In the present suit seeking to compel the Insurer to reimburse Insured for such sums, the Indemnity Company denies liability on the theory that exceptions (d) and (h) of Paragraph A in the policy excluded coverage because: (1) The men were working for an independent contractor; and (2) the work was preparatory to, or a part of, new construction. The lower Court, believing that the injuries occurred within both of these exceptions, denied recovery, and Insured appeals.

Undoubtedly, the work was being done by, and the men were under the supervision and control of, an independent contractor. It is also true that the work being done was incidental to new construction work, but the basic question here is, what happens when the injuries and deaths were not "caused by" the work of the independent contractor but were caused by a combination, or a concurrence, of the work of the independent contractor and the operation of cement manufacture by the Insured?

The language of the coverage is broad. The Insurer agreed, in respect to accidents involving personal injury, "to pay * * * any sums for which the insured shall become liable as damages imposed by law on account of such injuries, including death * * * suffered, or alleged to have been suffered, by any person or persons while at the premises * * * if caused by the operation of the work described in Statement 4." (Cement manufacturing.)

 The policy covered liability imposed by law on account of personal injury suffered, or claimed to have been suffered, by any one, not an employee, while on the premises of Insured, if the injury was caused by the operation of the work of manufacturing cement. The entire plant was operated by electricity. The high tension wires in question were used to carry the electric current by which the plant was operated. The lines and electric current were integral and essential parts of the op-

eration of the work of cement manufacture, and were within that coverage of the policy. The appellee contends, however, that the exclusions (d) and (h) of Clause A should be applied because the injured men were engaged in work being done for the Insured by an independent contractor and also that it was new construction work, or work incidental thereto. The frangibility of that contention is demonstrated when it is projected against the language of the policy. The exclusions are not of *persons working for an independent contractor or on new construction,* but of injuries *caused by the work* of an independent contractor. The electric current used in the operation of Insured's cement plant was, at least, a proximately concurring cause of the injuries. The exclusions (d) and (h) do not exclude coverage in instances where the Insured's operations, or negligence, concur with the work or negligence of an independent contractor to produce an injury to one on the premises of the Insured, nor do the exclusions eliminate coverage on situations where the instrumentalities used in cement manufacture by Insured either negligently contributed to such injury, or were the proximate cause thereof.

In Dixie Pine Products Co. v. Maryland Casualty Co., 5 Cir., 133 F.2d 583, 585, this Court, speaking through Judge Holmes, said:

"It is well settled that the words 'direct cause' ordinarily are synonymous in legal intendment with 'proximate cause,' a rule applicable to causes involving the construction of an insurance policy."

It does not appear that any different rule would be applicable to the language of the policy now under consideration. There seems to be little to choose between the phrase "an injury caused by" and the phrase "an injury *directly* caused by."

What, other than Insured's negligence, could render Insured liable for damages imposed by law for personal injuries? It is quite apparent that the law would not impose liability on the Insured for personal injuries to one not its employee, except for its actionable negligence.[1]

Since, as noted heretofore, the Insurer agreed, in respect to acts involving personal injuries arising out of the operation of cement manufacturing, to pay any sums for which the Insured should become liable as *damages imposed by law* on account of

---

[1] Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S.W. 330.

such injuries suffered, or alleged to have been suffered, by anyone not an employee of the Cement Manufacturing Company while on the premises of the Insured, and since the law will not impose damages upon the Insured on account of personal injuries to a non-employee except on account of the negligence of the Insured, and since the electric current is carried on the high tension line as an integral and essential part of the operation of cement manufacturing, and since the electric current either produced the injuries or at least concurred in producing them, and since the personal injury suits against the Insured alleged actionable negligence against the Insured arising out of an essential step in the manufacture of cement, and since the Insurer obligated itself, as aforementioned, to defend such suits, even if groundless, false, or fraudulent,[2] it necessarily follows that the policy, by its positive provisions, promised to protect the Insured in the circumstances here.

Judgment is reversed with directions to enter judgment for appellant.

Reversed with directions.

---

[2] Maryland Casualty Co. v. Moritz, Tex.Civ.App., 138 S.W.2d 1095.