MOORHEAD MACHINERY AND
BOILER COMPANY, Appellant,

v.

EMPLOYERS COMMERCIAL UNION
INSURANCE CO. OF AMERICA,
Respondent,

Great American Insurance Co.,
Defendant.

No. 49086.

Supreme Court of Minnesota.

July 20, 1979.

Rehearing Denied Dec. 12, 1979.

Speeter, Johnson, Hautman & Olson, Vincent E. Johnson and Patrick V. Johnson, Minneapolis, for appellant.

Meagher, Geer, Markham Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne and O. C. Adamson, II, Minneapolis, for respondent.

Heard before ROGOSHESKE, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Plaintiff Moorhead Machinery and Boiler Company (hereinafter Moorhead) contracted to design and build two meal storage tanks on a customer's site. While the completed tanks were in use, one of the tanks collapsed due to a design flaw, and, because the tanks were joined by a rigid conveyer

and catwalk structure, the other was also destroyed.

Moorhead carried liability policies with defendant Employers Commercial Union Insurance Company of America (hereinafter Employers Commercial). Employers Commercial paid $137,992.10 for other claims involved but refused to pay the cost of replacing the tanks that totalled $172,136.59. Moorhead thereupon reconstructed the units and brought suit against Employers Commercial seeking indemnification for the costs of reconstruction to the extent of the policy limits. The trial court found that the coverage Moorhead sought was excluded by the insurance policy in question and found for the defendant. We affirm.

This case involves the interpretation of three exclusions to a liability policy.[1] Moorhead contends that the exceptions to exclusion (i) are completely covered by exclusions (l) and (m). Moorhead concludes that this results in a conflict in the clauses which must be decided in favor of the insured. Moorhead also claims that an exception to an exclusion indicates that coverage exists though the coverage is later excluded by other exclusions.

We believe Moorhead's contention that the exceptions to exclusions (i) are completely covered by exclusions (l) and (m) is incorrect. For example, Moorhead might construct a tank next to a pre-existing tank and join the two by a catwalk. If, in attaching the catwalk, Moorhead were to damage the pre-existing tank so that it collapsed later while in use, the exceptions to exclusion (i) preclude exclusion (i) from eliminating coverage. Also exclusions (l) and (m) do not apply to the tank which collapsed beyond the cost of attaching the catwalk to it. Thus, this situation is within the exclusions to (i), but not then eliminated by (l) and (m).

In the present case, however, the exceptions to exclusion (i) as well as exclusion (l) apply to the factual situation presented. Moorhead also argues that a situation which falls into an exception to one exclusion cannot be excluded by another exclusion without being misleading to the insured.

Several courts and treatises have considered the problem of exceptions to exclusions. An exception was first thought to eliminate only the effect of the exclusion wherein it occurred. In *Dolph v. Maryland Casualty Co.*, 303 Mo. 534, 261 S.W. 330 (1924), the policy in question contained a clause which provided that the policy did not cover accidents to persons making additions, alterations or extraordinary repairs to an elevator without a written permit to work on the equipment, "except that ordinary repairs * * * may be made without such permit." 303 Mo. 542, 261 S.W. 331. The court held that the exception in the exclusion did not mean that the person making ordinary repairs without a permit was covered, but that "his injury does not come within the terms of the policy * * unless an injury occurs in the manner covered by other terms of the policy." 303 Mo. 547, 261 S.W. 333. Though the "other

---

1. Reduced to their pertinent parts, the exclusions state: "This insurance does not apply:

      \*    \*    \*    \*    \*    \*

"(i) to property damage
"(2) * * * to
      \*    \*    \*    \*    \*    \*
"(iv) that particular part of any property, not on premises owned by or rented to the insured
      \*    \*    \*    \*    \*    \*
"(b) out of which any property damage arises, or
"(c) The restoration, repair or replacement which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured,

"but parts * * * (b) and (c) of this exclusion do not apply (1) to the named insured's products where the insured has relinquished physical possession of such products to others, or (2) where the property damage arises out of the completed operations hazard,
      \*    \*    \*    \*    \*    \*
"(l) to property damage to the named insured's products arising out of such products or any part of such products;
"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

terms" in this case were insuring clauses, rather than exclusions, Couch relied on the case to state:

"When a policy exception itself contains an 'exception' clause, the effect of the latter is to *restrict the sphere of operation of the exception* and thus make the exception inapplicable and allow recovery if the harm sustained is otherwise within the coverage of the policy." Couch, Insurance (2 ed.) § 44.416. (Italics supplied.)

The courts have not generally followed this rule, however.

Employers Commercial referred to another treatise to support its position that an exception to an exclusion is not a grant of coverage:

"Present policies contain exceptions from the exclusions which led courts in some jurisdictions to conclude that an exception from an exclusion stated in terms of 'except with respect to' was a grant of coverage. This was not the intent of the insurers.

"Under the new policy exceptions are stated thus, 'but this exclusion does not apply to'; this unambiguous language avoids any inference that another exclusion may not apply." 3 Long, Liability Insurance, Appendix B, § 10 (1978).

But only *Haugan v. Home Indemnity Co.,* 86 S.D. 406, 197 N.W.2d 18 (1972), provides direct support to Employers Commercial's position that an exception to an exclusion does not grant coverage in derogation of all other exclusions. The court (one judge dissenting) held that an exception to an exclusion was subject to, and limited by, other policy exclusions.

On the other hand, several cases have held that an exception to an exclusion is a grant of coverage. In *Weedo v. Stone-E-Brick, Inc.,* 155 N.J.Super. 474, 382 A.2d 1152 (1977), certification granted, 75 N.J. 615, 384 A.2d 845 (1978), the court was interpreting an exclusion with an exception which under the facts of the case was excluded by a later exclusion. The court held that an ambiguity was created which would be resolved in favor of the insured. The court stated that a right granted in one provision may not be taken away in another. See also *Federal Insurance Company v. P. A. T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050 (1976); *Fontainebleau Hotel Corp. v. United Filigree Corp.,* 298 So.2d 455 (Fla. App.1974) certiorari denied, 303 So.2d 334 (Fla.1974).

In *Commercial Union Assur. Companies v. Gollan,* N.H., 394 A.2d 839 (1978), the court (two judges dissenting) interpreted certain exclusions in an insurance contract to reach a result similar to the cases cited above, though none of the earlier cases was relied upon. The court noted that the exclusion the insurer cited as precluding coverage was in small type, 78 lines below the exclusion which "granted" coverage by its exception. The court concluded that the two clauses were irreconcilable and held that the first controlled. The court stated:

"Our holding in this case is limited to situations in which, taking the insurance policy as a whole, a reasonable person could believe that certain occurrences were covered by the insurance policy, notwithstanding that the insurance company intended and considered them to be excluded. In order to exclude occurrences from coverage in an insurance policy, the insurer must clearly state the exclusion in conjunction with whatever sections it is intended to modify." N.H., 394 A.2d 842.

Whether an exception to an exclusion is considered a grant of coverage should be determined on the language of the individual policy, in light of the normal rules of construction. Fairness to the insured is the primary consideration. The approach of *Haugan,* that an exception to an exclusion limits only the exclusion wherein it occurs, ignores the possibility of misleading the insured. The approaches of *Weedo, Federal Insurance Company,* and *Fontainebleau,* that an exception is essentially a grant of coverage, ignore the actual language of the policy and assume that an insured may read and rely on only a part of his policy. The approach of *Commercial Union,* which we find persuasive, reaches a reasonable middle ground by looking at the

individual insurance contract. The existence of an exception to an exclusion should only indicate that the exception is a grant of coverage if the policy as a whole is ambiguous.

The question, then, is whether the policy is ambiguous. Exclusions (*l*) and (m) are clear in precluding coverage in the instant situation. The exclusions were not hidden or buried in complex legal language. Though Moorhead may have been aided in determining its coverage if (i), (*l*) and (m) had been adjacent clauses, it is not always possible to make a complex legal document that is clear upon a cursory inspection. Though more careful drafting of the insurance contract may have avoided this lawsuit, we cannot say the contract is ambiguous as a matter of law.

Moorhead also argues that because exclusion (i) was an amendatory endorsement exclusion on a separate form, in larger type, with certain words emphasized, its exceptions should control over exclusions (*l*) and (m). Moorhead relies on *Canadian Universal Ins. Co., Ltd. v. Fire Watch*, 258 N.W.2d 570 (Minn.1977). In that case an insurer substantially reduced coverage of its insured by endorsement upon renewal. The insurer did not explain the new limitations to the insured, nor did it respond to the insured's inquiries as to the insured's coverage. This court therein adopted the following rule:

" * * * [W]hen an insurer by renewal of a policy or by an endorsement to an existing policy substantially reduces the prior insurance coverage provided the insured, the insurer has an affirmative duty to notify the insured in writing of the change in coverage. Failure to do so shall render the purported reduction in coverage void. Any question of an individual's insurance coverage shall then be determined in accordance with the terms of the original policy prior to the renewal or endorsement." 258 N.W.2d 575.

In the instant case the amendatory endorsement exclusion *expanded* rather than reduced coverage.[2] Also, there is no indication in the record that the policy ever existed *without* the endorsement.[3] But Moorhead also contends that "[i]f the exceptions to amendatory endorsement exclusion (i) were inserted in the policy for a purpose other than to provide coverage for a specific situation, the insurer should have stated its purpose in the policy." But this is only a restatement of Moorhead's argument that an exception to an exclusion is a grant of coverage. Further, Moorhead notes, exclusion (i) is more specific than the general exclusionary language of exclusions (*l*) and (m).

**2.** The original exclusion (i) stated: "This insurance does not apply:

\* \* \* \* \* \*

"(i) to property damage to property:

by reason of faulty workmanship thereon by or on behalf of the insured."

**3.** Although there is no evidence in the record, Employers Commercial states in its brief that the policy was a new policy, not a renewal policy, and the endorsement was part of the policy as issued.

"(1) owned or occupied by or rented to the insured, held by the insured for sale or entrusted to the insured for storage or safekeeping, or

"(2) except with respect to liability under a written sidetrack agreement or to damage to property, (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured,

"(i) while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured,

"(ii) consisting of tools or equipment while being used by the insured in performing his operations,

(iii) in the custody of the insured which is to be installed, erected or used in construction by the insured,

"(iv) being that particular part of any property not on premises owned by or rented to the insured,

"a. upon which operations are being performed by or on behalf of the insured at the time the injury thereto or destruction thereof arising out of such operations, or

"b. out of which any injury or destruction arises, or

"c. the restoration, repair or replacement of which has been made or is necessary

But since no ambiguity has been demonstrated, no rules of construction need be applied. An exception to an exclusion is not as a matter of law limited in its effect to the exclusion wherein it occurs, and where an exception creates ambiguity by its language or position in the contract it will be interpreted in favor of the insured. In this case, however, the policy was not ambiguous. The insurance policy is admittedly complex, but the insured sought complex coverage for its business operations. As the trial court noted: "This is not a case of an unsophisticated layman having his reasonable expectations of coverage dashed on a complex exclusionary clause separated by several pages and thousands of words from the language he felt cloaked him with coverage."

Affirmed.

TODD, J., took no part in the consideration or decision of this case.