ELSIE BARKHOEFER et al., Respondents, v. HENRY W. BARKHOEFER, Appellant.

| 93 | 373 |
| 96 | 4563 |

St. Louis Court of Appeals, March 18, 1902.

1. **Partition: MORTGAGE LIEN: PARTIES TO ACTION.** In a partition suit, all mortgage liens in favor of parties to the cause must be respected and for that purpose the statutes require such lien holders to be made parties.

2. ———: STATUTORY REMEDY OF PARTITION. The object of the statutory remedy to partition land is to definitely ascertain the respective interests, whether in enjoyment or expectancy, or by lien or ownership, the different parties possess in the property, to set those interests apart to them in kind, if possible, or in lieu thereof to have the land sold and its proceeds justly distributed.

3. ———: ———. And statutes conferring the legal remedy of partition contemplate the settlement of collateral controversies by a subsequent action.

4. **Res Adjudicata.** The rule in regard to former adjudications is that when the very cause of action once decided is again brought forward in a subsequent suit between the parties, the judgment in the first action is conclusive and constitutes a perfect bar to the prosecution of the second, as to all matters which might have been litigated therein, whether in point of fact they were or not.

5. ———: ———. But the judgment in the first case enjoys no such prerogative if the second case is for a different cause of action from that contested in the first.

6. ———: ———. And in the case at bar, the claim of respondents was neither passed on in the partition suit, nor necessarily involved therein, nor required to be brought forward, nor was even an appropriate matter for consideration in that suit, and the plea of *res adjudicata* should not have been sustained.

7. **Written Opinion of Trial Judge.** Judges of trial courts are not bound to state the reasons which lead their minds to the conclusions embodied in their rulings, much less to deliver written opinion, *although it is highly proper and commendable in them to do so.*

7. **Practice, Appellate:** WRITTEN OPINION OF TRIAL JUDGE. And appellate courts have found the written opinions of trial judges helpful, and in some instances they have been adopted as the opinions of appellate tribunals.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Rassieur & Buder* for appellant.

(1) Respondents' claim was adjudicated in the partition suit. Barkhoefer's curtesy interest in the wife's one-seventh of the land was involved therein, and was lessened by the finding and decree that her interest consisted of the remainder after the payment of the deed of trust. Akers v. Hobbs, 105 Mo. 127; Lloyd v. Davis, 124 Cal. 348; Barnes v. Cunningham, 9 Rich. Eq. (S. Car.) 475. (2) Under the statutes and law respondents' claim, if any, was one which could have been litigated in the partition suit. Secs. 4373, 4375, 4376 and 4386, R. S. 1899; Herchenroeder v. Herchenroeder, 75 Mo. App. 285.

GOODE, J.—This action was brought by appellant's minor children against him to recover a sum of money alleged to have been paid out of their interest in certain land involved in a partition suit, in which cause, as in this, they acted by their curator, the St. Louis Trust Company. The children's

interest in the land was derived from their mother, Fannie Barkhoefer, wife of appellant, she having died intestate, owning an undivided one-seventh interest in the lands belonging to the estate of her father, John J. Menges, deceased.

On or about May 22, 1888, Fannie Barkhoefer and her husband made and negotiated their certain notes for the aggregate amount of three thousand five hundred dollars, and gave their joint deed of trust on all their interest in the so-called Menges real estate which at that time was only the wife's undivided seventh, the appellant's interest having been acquired subsequently.

Respondents' mother, Fannie Barkhoefer, died in February, 1891. During her lifetime she and her husband, joined by certain other heirs of Menges, brought suit for partition against the remaining heirs and all others then interested in the property. This suit was brought to the April term, 1899 of the circuit court of the city of St. Louis, as all of the land lies in said city. The holder of the above-mentioned notes, and the trustee in the deed of trust, were also parties to that action.

After Fannie Barkhoefer's death, an amended petition was filed in the partition suit, the parties being rearranged, and thereafter Henry W. Barkhoefer was the only plaintiff therein, and his said two children with the others interested in the property were on the other side of the case as defendants. Barkhoefer was then the owner in his own right of another undivided two-sevenths interest in the same land, which interest was acquired by him by mesne conveyances from other heirs of the said Menges.

The decree in the partition suit described the said three thousand five hundred dollars deed of trust as that of Fannie Barkhoefer, ordered that the property be sold, that the said deed of trust be paid out of her share, and further found and adjudged that after deducting the curtesy interest therein of this appellant, Henry W. Barkhoefer, the remainder should

be paid to his two children. The real estate was sold and Fannie Barkhoefer's share in the proceeds exceeded the amount due on the deed of trust. Barkhoefer's curtesy interest in the wife's seventh of the land was calculated on her share of the proceeds, after deducting the amount due on said deed of trust, and after deducting the amount of such curtesy interest, the balance was paid to the children's curator.

On June 11, 1897, final judgment was rendered in said cause in accordance with the decree; the money was paid over to the parties entitled to it in accordance with its terms, and the special commissioners in the case were discharged. The plaintiffs seek to recover from the defendant the amount deducted from their interest in the proceeds of said land as heirs of their mother, on the ground that the debt for which she, in conjunction with her husband, executed the deed of trust on her interest, was for money borrowed by the husband and for which he was the principal debtor.

The answer in effect was a general denial, and further pleaded that Fannie Barkhoefer held her share in the land as her separate property and intended to charge it with the debt; and also pleaded *res judicata* on account of the judgment in the partition proceeding.

Besides the introduction of documentary testimony, respondents offered at the trial the testimony of two witnesses to establish their contention that the money raised by the three thousand five hundred dollars deed of trust was used by Barkhoefer, and that it was, as a matter of fact, his sole indebtedness.

The circuit court rendered judgment in the cause in favor of defendant. Plaintiffs in due time thereafter filed their motion for a new trial, which was sustained on the ground that the judgment was against the law and for the wrong party; whereupon defendant appealed to the Supreme Court

from said order sustaining plaintiffs' motion for a new trial, which court transferred the appeal to this court.

Was the present cause of action adjudicated in the partition suit? is the question for decision. Just what the issues in that suit were can not be ascertained, because the pleadings therein are not preserved in the record before us; but as a judgment of a court of competent jurisdiction is presumed to be according to the pleadings and evidence in the cause, unless the contrary is affirmatively shown, this appeal must be determined on the assumption that no issue was made in the former case about whether Barkhoefer was the principal obligor and his wife but a surety on the notes secured by the deed of trust. Counsel treat the case in their briefs as if no such issue was joined in the partition suit, while the decree therein merely found that the deed of trust was executed by Fannie Barkhoefer and Henry W. Barkhoefer on her estate in the land to secure the notes, without finding who signed them as principal, and adjudged that from the interest of their children (these respondents) in the proceeds of the land, should be subtracted the amount of the notes and also the value of Barkhoefer's curtesy in the remainder. Appellant's contention is that the effect of said finding and judgment was to adjudicate the respondents' present demand whether it was in issue in the former case or not—that as the decree fastened the debt evidenced by the notes on their inheritance, thus diminishing the value of their father's curtesy *pro tanto,* this was equivalent to deciding the notes were primarily the mother's obligations.

Putting aside for a moment the bearing of the law of former adjudication, that argument strikes us as weak on the facts. Fanny Barkhoefer had incumbered her land and the lien of the incumbrance attached, of course, to the proceeds realized by its sale; Barkhoefer owned no estate or interest in the land, when the deed of trust was executed, for it to take effect on, and the terms of that instrument did not cause

it to take effect on an after-acquired interest, which facts sufficiently explain the decree.

But we think collateral, incidental disputes between some of the parties to a statutory proceeding for partition (which the former action was) ought not to be gone into, because they are not germane to the subject-matter of the action or its principal purpose; and *a fortiori* that they need not be brought forward for decision therein on pain of having them treated as *res judicata* in a subsequent action expressly requesting their determination.

Two points are to be considered:

First. Was the claim of the respondents against their father actually passed on in the first case? The decree answers this question; it was not. We assume the pleadings in that case tendered or joined no issue about the capacities in which Barkhoefer and his wife executed the notes and deed of trust, or the children's right to have their father make good to them the amount deducted from their interest on account of the incumbrance, which was evidently not then in the minds of either the parties or of the court. The decree simply enforced against Fanny Barkhoefer's land the lien which said deed created, as the court was bound to do. In a partition suit all mortgage liens in favor of parties to the cause must be respected and for that purpose the statutes require such lienholders to be made parties. Harbison v. Sandford, 90 Mo. 477.

Second. Was the curator of the respondents required to assert their present claim in the partition suit? Is the claim within the scope of the rule that a matter which might have been, but was not, litigated in a previous action will, nevertheless, be treated as *res judicata* in a subsequent action between the same parties in which it was asserted? We should note in this connection that both the purpose and subject-matter of the two actions (the partition suit and this one) are radically distinct. The object of the statutory remedy

to partition land is to definitely ascertain the respective interests, whether in enjoyment or expectancy, or by lien or ownership, the different parties possess in the property, to set those interests apart to them in kind, if possible, or in lieu thereof to have the land sold and its proceeds justly distributed. Chap. 53, art. 1, secs. 4373 to 4378, R, S. 1899. In such a case the judgment deals primarily with the titles, interests and liens held by the different parties and only incidentally, if at all, with matters not directly affecting those property rights. Disputes and claims in regard to rents, profits, taxes and improvements seem sometimes to be adjusted when an equitable division is impossible unless they are taken into account, for the decisions have failed to strictly respect the distinction between the statutory proceeding for partition and the old chancery remedy, though they have recognized in a general way the rule that broader relief may be granted in the equitable proceeding. Holloway v. Holloway, 97 Mo. 628; Thomas v. Holden, 117 Mo. 118; Benoist v. Thomas, 121 Mo. 660; Gunn v. Thurston, 130 Mo. 339; Budde v. Rebenack, 137 Mo. 179.

The statutes conferring the legal remedy contemplate the settlement of collateral controversies by a subsequent action; for they provide that whenever there are parties claiming the same portion adversely to each other, the court may either decide upon such adverse claims, or, direct the controverted share or shares to be set off and allotted, subject to the claims of the contending parties against each other. If the lands have been sold and there are adverse claims as to some shares, the money which belongs to the owner of the share or shares so adversely claimed, is to be retained by the sheriff subject to the future orders of the court; and any party to the partition proceeding claiming the money as owner of the premises sold, may file a petition setting forth the nature of his claim and the particulars, whereupon there shall be a summons issued to the other side, issues framed and the matter deter-

mined.  R. S. 1899, secs. 4389 and 4416 to 4421.  It is wise to remit such disputes to a subsequent action for settlement; for we may readily perceive that if they were heard in partition cases, they would often involve a trial much more complicated and tedious than the main cause, although most of the parties to the latter would have no concern whatever with the collateral inquiry.  The case in hand is a good illustration.  No contest occurred in the partition suit, but if the present claim had been then preferred by these respondents against their father, the court would have had to hear a mass of testimony in order to determine whether Fannie Barkhoefer was surety for her husband, or herself the principal debtor.

The effect of the statutory provisions on this subject was considered and determined in a case (Martin v. Trail, 142 Mo. 89) wherein the defense of former adjudication was so much more plausible than it is here that no doubt remains as to what our ruling should be.  That was an action of ejectment brought by the plaintiff against her father to recover a tract of land inherited from her mother.  Two defenses were interposed; first that the defendant held an estate by curtesy in the land which entitled him to possession during his life; and, second, that his right to said estate had been adjudicated in a previous partition suit to which he and his daughter were parties; and in fact, the pleadings in the partition suit stated he held such an interest and the decree set off to his daughter the very tract she sued for in the ejectment case "subject to the life interest therein of her father."  That he was entitled to curtesy, was denied because his wife had never been seized of the land, as her estate was reversionary and the particular estate continued until after her death.  This ruling left the judgment in the partition suit to be disposed of, and it was held that said judgment was no bar to the plaintiff's recovery in the ejectment case because an issue was not *distinctly* made in the first action as to Trail's right to curtesy, there having

been manifestly no contention between him and his daughter over the matter, which was left to be subsequently determined, as the statutes provide may be done. On these facts and on such a record, it was said: "It is evident that the adverse interests of plaintiff and defendant were never passed upon nor adjudicated."

We might stop with the citation of that decision, for it settles the points raised on this appeal. The subject-matter of the present litigation is entirely distinct from the subject-matter of the partition case. In fact, the present cause of action *was created* by the judgment in the partition case charging the respondents' interest in the proceeds of their mother's land with the debt of their father: but for that judgment they would have no claim against their father.

The general rule in regard to former adjudications is that when the very cause of action once decided is again brought forward in a subsequent suit between the parties, the judgment in the first action is conclusive and constitutes a perfect bar to the prosecution of the second, as to all matters which might have been litigated therein, whether in point of fact they were or not; for no one ought to be twice vexed about the same dispute or claim. In the interest of public tranquility, and to permit citizens to pursue their affairs without unreasonable annoyance, or being called on to waste time in repeated lawsuits over identical demands, courts will not permit the propriety of the judgment to be questioned or the matter to be again investigated *in pais*.

But the judgment in the first case enjoys no such prerogative if the second action is for a *different* cause of action from that contested in the first one; this is the distinction to be always seized as vital to the right determination of pleas of *res judicata,* and it will clear up a great deal of the confusion in the multitudinous decisions on the subject. In the second class of cases the judgment only concludes the parties as to points actually determined; that is, as to issues tendered

or joined by the pleadings and decided; not those which might properly have been but were not; for the rights of parties ought not to be construed away. Dickey v. Heim, 48 Mo. App. (K. C.) 114; Cromwell v. Sac. County, 94 U. S. 351; Short v. Taylor, 137 Mo. 517; Kerr v. Quarles, 14 Gratt. 48. It is manifest that the claim of the respondents was neither passed on in the partition suit, nor necessarily involved therein, nor required to be brought forward, nor was even an appropriate matter for consideration in that suit.

If on a retrial of this cause the issues should be found against the appellant, the amount recovered by the respondents ought to be so limited that the appellant will be in no worse plight than he would have been if he had discharged the deed of trust indebtedness in the first place. It is plain that if he had paid that debt he would have been entitled to a curtesy in the amount deducted from the proceeds of his wife's interest to pay it. He ought not to lose that portion of his curtesy and also be compelled to reimburse these respondents for the full amount of said indebtedness, which would give them a part of their inheritance free from the curtesy their father was entitled to have and enjoy in the whole of it.

We note that the learned circuit judge filed a written opinion with his ruling on the motion for a new trial, which is not preserved in the record or the briefs of either party. Appellate judges are materially assisted in their consideration of a cause by having before them a memorandum of the reasons and authorities which induced an unbiased mind to pronounce a certain judgment, and we desire to commend and encourage the practice of preparing such opinions and enabling this court to get the benefit of them in cases which are appealed to it. Judge THOMPSON once said: "Judges of the courts of first instance are not bound to state the reasons which lead their minds to the conclusions embodied in their rulings, much less to deliver written opinions, *although it is highly proper*

*and commendable in them to do so."* Hanel v. Freund, 17 Mo. App. (St. L.) 618. These opinions are not a part of the record unless incorporated in the bill of exceptions and have, of course, only the force of an argument; but we have found them helpful and in some instances they have been adopted as the opinions of the appellate tribunals. Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212; Bradley v. Judd, 127 Mo. 434.

The order sustaining the motion for a new trial is approved and affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.