WM. W. BOILLOT, APPELLANT-RESPONDENT, v. INCOME GUARANTY COMPANY, RESPONDENT-APPELLANT.—102 S. W. (2d) 132.

Kansas City Court of Appeals. February 1, 1937.

*Irwin & Bushman, Wm. W. Boillot* and *A. B. Walker,* for appellant-respondent.

*Davis & Davis* for respondent-appellant.

REYNOLDS, J.—This is a suit on an accident insurance policy issued by the defendant to the plaintiff on January 3, 1930, by which the plaintiff seeks to recover a judgment for monthly indemnities provided by said policy at the rate of $100 per month, coming due between January 11, 1933, and September 11, 1935, for alleged total and continuous disability between such dates occasioned by accidental means in which he lost the greater part of his right hand, including the fingers and a part of the thumb thereof. The accident is alleged to have occurred on or about June 11, 1932, in Audrain County, Missouri, and during the life of the policy.

The suit was filed in the Circuit Court of Audrain County and was later transferred by change of venue to the Circuit Court of Sullivan County, in which court it was finally heard and determined and judgment was rendered for the plaintiff in the sum of $3003.64, being for monthly indemnities in the sum of $2683.33 and interest in the sum of $320.31.

At the time that the policy was issued and delivered to him, plaintiff's occupation was that of a piano tuner; and, by the terms of the policy, the defendant, in consideration of premiums paid it and agreed to be paid it by plaintiff, insured plaintiff, under Class A, among other things, against loss resulting solely from bodily injuries "effected, directly and independently of all other causes through Accidental Means (excluding self destruction, or any attempt thereat, while sane or insane)" and agreed by Part B therein that, if such bodily injuries, independently and exclusively of all other causes, should totally and continuously disable the plaintiff from performing any and every duty pertaining to his occupation, it would pay, subject to Part I, beginning with the first day of such disability, a monthly indemnity of $100 for the period of such con-

tinuous total disability and, if such disability should necessitate the removal of the plaintiff to a hospital, by Part H it further promised to pay in addition to the monthly indemnity the amount expended monthly by him for said hospital charges but not in excess of fifty percent. of the monthly indemnity. It also provided by Part F indemnity for disability resulting from bodily disease and by Part G indemnity for loss of time by him in the event he should be quarantined. Indemnities were also provided by Parts A, C, D, and E of the policy. The amount of the monthly indemnities provided by Part B was fixed by reference therein to a prior provision of the policy which states that the principal sum under the policy is $5000 and the monthly indemnity is $100.

Part I, to which Part B is made subject, provides:

''The total of all indemnities under Parts B to H, inclusive, payable on any one claim or payable in the aggregate on all claims arising under said Parts B to H inclusive, shall not be greater than the equivalent of Fifty months of disability indemnity as hereinbefore provided. When the full amount of the aggregate disability indemnity has been paid no further indemnities shall be payable and all insurance under this policy shall cease, except that thereafter the Insured may at his option continue the policy for its death and dismemberment benefits at one-third the then premium, or cancel the same and receive from the Company the premium paid for any unexpired term hereunder.''

Part I is modified by an endorsement on said policy of date January 3, 1930, whereby, in consideration of an additional premium embraced in the premium stated in the policy, the defendant agreed that. in case of any disability covered by the policy and originating during the term thereof and before the aggregate indemnity has fully accrued, if the plaintiff should within ninety days after the date of the accrual of the full aggregate indemnity be adjudged by competent authority satisfactory to defendant to be totally and permanently disabled, the defendant would continue to pay so long as plaintiff should live and suffer such permanent, total disability the monthly indemnity provided in the policy, regardless of limitations therein contained as to aggregate indemnity, subject otherwise to all the terms and provisions of the policy.

A modification of Part B. was also made by endorsement on said policy effective April 3, 1930, that, in consideration of reduced premiums, the defendant should not be liable for the first thirty days of any disability, but that the policy should otherwise remain the same.

Other provisions of the policy will be noted if and as occasion requires.

The petition alleges the issuance and delivery of the policy of date

January 3, 1930, in consideration of the payment of certain premiums paid or to be paid by plaintiff, and alleges that it insured the plaintiff continuously thereafter, so long as the quarterly premiums were paid, "in the sum of $100 per month indemnity against the total loss of time resulting from bodily injuries effected during the term of said insurance directly and independently of all other causes through accidental means" and that, if such bodily injuries "independently and exclusively of all other causes totally and continuously disable the insured from performing any and every duty pertaining to his occupation, the company will pay, subject to Part I, beginning with the first day of such disability, a monthly indemnity at the rate of the monthly indemnity hereinbefore specified for the period of such continuance of total disability." It alleges that the occupation of the plaintiff was, at the time such policy was delivered, that of a piano tuner and that his occupation as such continued until the date of the accident complained of; that, on or about June 11, 1932, while said policy was in full force and effect, he, at the county of Audrain, suffered the loss of the greater part of the thumb thereof, effected by accidental means (to-wit, the accidental discharge of a shot gun at the time being carried by the plaintiff); that such bodily injuries effected by accidental means as aforesaid, independently and exclusively of all other causes, totally, continuously disabled the plaintiff from performing any and every duty pertaining to his occupation of piano tuner from the time of such accident to the time of the filing of this petition and that he at the time of the filing of the petition was from said cause so disabled; that plaintiff has performed all of the terms of said contract on his part to be performed, including the payment of the quarterly premiums thereon from the due dates as they became due; that the defendant has paid the hospital bill of the plaintiff necessitated by said injuries, according to the terms of the policy, and has paid plaintiff the indemnities due under the terms of the policy to January 11, 1933, but has refused to pay the monthly indemnities due the plaintiff for the loss of time on account of his said injuries from and since January 11, 1933, to September 11, 1935; that there is due to the plaintiff under the terms of said policy monthly indemnities at the rate of $100 per month to be paid each and every month from January 11, 1933, amounting in all to the sum of $3200, the last two months of which in the sum of $200 the plaintiff remits and waives; that demand for the payment of said sum has been made to the defendant, but it has refused to pay the same; and that it is indebted to plaintiff on account of interest on said monthly indemnities in the sum of $231. It prays judgment for the monthly indemnities in the aggregate amount due on said policy from January 11, 1933, to September 11, 1935, in the sum of $3000, together with

interest on the monthly indemnities as they became due and payable at the rate of six per cent. per annum, amounting to $231, and for costs.

The defendant by its answer admits the execution of the policy of the date alleged in the petition and the payment by it of the hospital bills of plaintiff (referred to in the petition) and of all indemnities claimed by him to be due under said policy to and including January 11, 1933, and denies generally all other allegations of the petition. By its answer, it sets up, among other defenses, that plaintiff arrived at the age of fifty-five years on September 27, 1934, and that, under the policy and Additional Provision N therein, any indemnity accruing to him on or after said date was automatically reduced one-third and that plaintiff, if entitled to recover at all, is not entitled to recover for any indemnity accruing after he arrived at the age of fifty-five years in excess of two-thirds of $100 per month. It sets up the provisions of Paragraphs 10 and 14 under the heading, "Standard Provisions," in said policy and the provisions of other paragraphs therein under said heading relating to proof of disability required to be made by the plaintiff and to the denial of any right in plaintiff to maintain any action at law or in equity to recover on said policy prior to the expiration of sixty days after making proof of his disability. It denies that plaintiff had made proof of disability as required by the provisions of said paragraphs and denies that he had performed all of the terms and conditions of the policy required to be performed by him. It sets up that it had furnished plaintiff with a blank form on which to make his proof of disability and submitted to plaintiff upon said form a number of questions to be answered by him, together with a statement to be signed by a physician, with the request that he make such proof on such form and answer such questions and return the same to defendant with the statement of the physician; that plaintiff failed to answer the questions contained in said form and failed to furnish a physician's statement; that said blank form as filled and submitted by him does not make or constitute a proof of disability under Standard Provision 10, noted above; and that this report was delivered to defendant on September 12, 1935. Defendant contends that, under Standard Provision 14, above noted, plaintiff had no right of action against this defendant until sixty days after September 12, 1935, and that plaintiff, for such reason, has no right to recover in this action.

Plaintiff by his reply admits that the policy contains Additional Provision N, referred to by defendant in its answer, and admits that he passed the age of fifty-five years on September 27, 1934, but alleges that his disability completely originated during the term of the policy and before the aggregate indemnity had fully accrued;

that such disability is total, permanent, and continuous; that he suffered the loss and injury complained of about June 11, 1932, and before he reached the age of fifty-five years; that his disability and his claim therefor come within the provisions of the endorsement upon the policy first above noted, of date January 3, 1930, relating to the continued payment of the monthly indemnities provided so long as he should live and suffer his permanent total disability; and that his claim to the full monthly indemnity of $100 is unaffected by Additional Provision N in said policy.

The plaintiff made further reply setting up that the defendant now denies and has always denied liability to plaintiff on account of the disability sued for under said policy and is estopped to plead failure of proof of disability on the part of plaintiff. He further sets up the provisions of Standard Provision 6 of said policy to the effect that the company, on receipt of notice of injury, would furnish to claimant such forms as are usually furnished by it for filing proofs of loss and that, if such forms are not furnished within fifteen days after receipt of notice, the claimant would be deemed to have complied with the policy as to proof of loss and alleges that he did give defendant notice of this action; that defendant received said notice but did not furnish forms for proof of loss within fifteen days of the receipt of such notice; and that the defendant thereby is estopped to plead failure of proof of loss on the part of plaintiff.

The plaintiff in his reply pleads a former suit in the Circuit Court of Audrain County, wherein he was the plaintiff and the defendant here was the defendant there, in which he obtained judgment on June 13, 1933, against defendant for unpaid monthly indemnities to January 11, 1933, under the policy here in suit, covering the same disability described in plaintiff's petition in this cause, and, by proper averments pleads such judgment in bar of any defenses set up by defendant in its answer to the cause of action stated in his petition except such matters as plaintiff had admitted or otherwise replied to and pleads that defendant is estopped by said judgment from denying that, on or about June 11, 1932, while said policy was in force and effect, plaintiff at the County of Audrain was solely through accidental means, independently and exclusively of all other causes, totally and continuously disabled from performing any and every duty pertaining to his occupation of piano tuner; from denying that said policy was in full force and effect; from denying that, at the time of said accident, plaintiff was a piano tuner and continued as such to the date of the accident; from denying that plaintiff had made due proof of loss under the policy; from denying that plaintiff had performed all of the terms and conditions of said policy on his part required to be performed; and from denying any of the matters and things determined or that could have been determined

in the former cause of action had and determined in the Circuit Court of Audrain County. Plaintiff also by his said reply denies each and every other allegation in defendant's answer contained.

It appears from the record that the policy in question was issued and delivered by the defendant to the plaintiff on January 3, 1930; that plaintiff was, at the time, a resident of Columbia, Missouri, and his occupation was that of a piano tuner; that, on June 11, 1932, while such policy was in force, the plaintiff, at the County of Audrain, suffered the loss of the greater part of his right hand, including the fingers and a part of the thumb thereof, effected solely through accidental means from the accidental discharge of a shot gun, which at the time was being carried by him.

It is further shown by the evidence that plaintiff's occupation as a piano turner continued from the date of the issuance and delivery of the policy to June 11, 1932, the time of the accident to him, and and that, at the time of such accident, his occupation was that of a piano tuner and that, by reason of the bodily injuries resulting from such accident, he was totally and continuously disabled from performing any and every duty pertaining to his occupation.

It appears from the record that, subsequently to his accident, the plaintiff, as alleged in his reply, filed suit in the Circuit Court of Audrain County against the defendant alleging his injuries and alleging that he had suffered the loss of the greater part of his right hand, including the fingers and a part of the thumb thereof, through accidental means (to-wit, the accidental discharge of a shot gun at the time carried by him) and that such bodily injuries, independently and exclusively of all other causes, totally and continuously disabled him from performing any and every duty pertaining to his occupation of piano tuner from the time of said accident to the time of the filing of his petition therein, in which suit he sought to recover and did recover judgment against the defendant on account of loss of time by reason of his disabilities so occasioned for the monthly indemnities provided by said policy, accruing thereunder from June 11, 1932, to January 11, 1933, in the sum of $600 and that the present suit is for continuing indemnities that have accured since January 11, 1933, upon the same disability.

Upon the trial of the present cause, the plaintiff introduced in evidence the policy sued on, the petition, answer, and reply in the former suit in the Circuit Court of Audrain County, referred to the verdict of the jury and the judgment of the court rendered therein, together with the opinion of the St. Louis Court of Appeals therein affirming said judgment on appeal, as reported in 83 S. W. (2d) 219 et seq.

At the date of the filing of the former suit in the Circuit Court of Audrain County, plaintiff's fingers on the right hand were gone;

and part of the palm and all of the thumb were gone, except a part of the upper joint of the thumb. His hand was entirely healed on said date. The same condition remained on September 11, 1935; and there had not been any change in such condition from that date to the date of the trial in the present suit.

It appears that the judgment in the former suit was satisfied by payment of the amount thereof by defendant to plaintiff.

There is also evidence tending to show that plaintiff had not been paid any monthly indemnity accruing under said policy since January, 1933.

It appears from an inspection of the petitions (in this suit and the former suit) that they both declare on the same policy, the same accident, the same identical injuries, and the same total and continuous disability incurred by reason of such accident and injuries; that the present suit is for continuing indemnities on account of the same disabilities as in the former suit, which have accrued since January 11, 1933, while the former suit was for indemnities which had accrued prior to and up to January 11, 1933. A comparison of such petitions likewise shows that the former suit was one between the same parties as the present suit and that both petitions charge that the bodily injuries complained of were effected during the life of the policy and solely through the same identical accidental means resulting in the same bodily injuries which, independently and exclusively of all other causes, totally and continuously disabled plaintiff from performing any and every duty pertaining to his occupation (that of a piano tuner); that plaintiff, at the time of such accident, was a piano tuner; that he was insured as such; and that he had performed all of the terms and conditions required on his part to be performed. The evidence in the present suit fully supports the allegations of the petition therein and also of the reply.

It appears, also, that any and all of the defenses set up by defendant in its answer in the present suit were set up and determined in the former suit or could have been set up and determined in the former suit, other than the defenses presented herein of failure to make proof of his continued disability and of the automatic reduction from $100 to $66.662/3 per month of any indemnity accruing after plaintiff passed the age of fifty-five years.

The court below, sitting as a jury, found for the plaintiff in the suit at bar and, in determining the amount of the judgment rendered in favor of the plaintiff, gave such effect to Additional Provision N, pleaded in defendant's answer, as decreased the amount of monthly indemnity due plaintiff after he reached the age of fifty-five years from $100 to $66.66 2/3 per month and rendered judgment for plaintiff on the basis of $100 per month from January 11, 1933, to the

date he reached the age of fifty-five years and of $66.66 2/3 indemnity thereafter in the sum of $2683.33 and interest thereon in the sum of $320.31, amounting in the aggregate to $3003.64.

At the close of plaintiff's evidence and again at the close of all of the evidence, defendant requested instructions in the nature of demurrers, which were refused by the court. The court gave numerous declarations of law on the part of both plaintiff and defendant.

The defendant prosecutes this appeal from the judgment rendered against it in favor of the plaintiff, and the plaintiff prosecutes a cross-appeal from such judgment insofar as it failed to render him a full indemnity of $100 per month after he reached the age of fifty-five years. The two appeals have by agreement been consolidated and are heard together.

## OPINION.

The defendant upon its appeal assigns error as follows:

"The court erred in awarding to plaintiff judgment for any sum on account of claimed monthly indemnity, because there was no evidence that plaintiff was, at any time during the period covered by this action, disabled from performing any duty pertaining to the occupation of a piano tuner.

"The court erred in holding that the judgment in the former suit was *res adjudicata* on the question of plaintiff's continued disability, after January 11, 1933.

"The court erred in holding that proof of injury, made before the trial in the former cause, obviated the necessity of proof of continued disability after January 11, 1933.

"The court erred in rendering judgment for plaintiff, absent evidence of compliance with the requirements of the policy sued on.

"The court erred in awarding to plaintiff interest on claimed indemnity, absent proof of any notice of disability or continued disability, during the period here sued for and absent proof of any demand or request for payment of such monthly indemnity.

"The court erred in giving plaintiff's finding of fact A and in giving plaintiff's declaration of law Nos. 1, 2 and 3.

"The court erred in refusing defendant's declaration of law Nos. 1 and 2 in the nature of a demurrer to plaintiff's evidence requested at the close of plaintiff's evidence and at the close of the entire case.

"The court erred in refusing defendant's declaration of law Nos. D-4, D-5, D-6, D-7, D-8, D-11 and D-15, as well as refusing to give other declarations of law requested by defendant.

"The court erred in not rendering judgment for defendant."

The plaintiff, upon his cross-appeal, challenges as error the action of the trial court in refusing certain declarations of law asked by him and in giving certain declarations of law asked by defendant relating to the construction to be given the provisions of Additional

Provision N of the policy set up in defendant's answer and in giving such effect to such provisions in the computation and rendition of its judgment as led to the reduction of the monthly indemnities to which plaintiff was entitled under the policy after he passed the age of fifty-five years from $100 per month to $66.66 2/3 per month and led to a judgment in such reduced amount instead of for the full amount. He also complains of the action of the trial court in excluding from consideration the endorsement of date January 3, 1930, affixed to the policy.

We proceed first with a consideration of the defendant's appeal.

1. One of the defendant's main contentions upon its appeal is that there is no evidence in the record to support the allegation of plaintiff's petition that he was totally, continuously disabled from performing any and every duty pertaining to his occupation of piano tuner during the time sued for and that the judgment in the former action in the Audrain County Circuit Court, set up in plaintiff's reply as a bar and shown by the evidence, was not *res adjudicata* as to the existence of such disability and that, such being the fact, the plaintiff is not entitled to recover herein and defendant's requested instructions in the nature of demurrers should have been given. The defendant alleges that no such issue as that of plaintiff's total and continuous disability after January 11, 1933, or between January 11, 1933, and September 11, 1935, was involved in or was among the litigated issues in the cause in which such judgment was rendered; that his disability between such dates was not established as a fact nor was it necessary that it be established as a fact in that cause and no question concerning such disability could have been determined therein under the issues therein made; that it was not charged in the petition in that cause that plaintiff was permanently disabled; that the question in this suit is not whether the plaintiff lost a part of his hand by an accident but is as to plaintiff's loss of time between January 11, 1933, and September 11, 1935, by reason of total and continuous disability to perform and carry on the duties of his occupation; and that the defendant did not, by the terms of the policy, agree to indemnify plaintiff for the partial loss of his hand and the determination by the former judgment that plaintiff had lost a part of his hand by accidental means could not be treated as *res adjudicata* of the further fact of plaintiff's continued disability to perform and carry on the duties of his occupation as a piano tuner between the dates mentioned.

The defendant cites numerous authorities to the effect that, where the causes of action are different, even though the parties are the same, the judgment in a former cause is conclusive in the latter only of matters which were in fact litigated and determined in such former cause and that such judgment is not conclusive of any fact

not necessary to be proved in the former suit. [Missouri District Telegraph Co. v. Southwestern Bell Telephone Co., 336 Mo. 453, 79 S. W. (2d) 257; Scheer v. Trust Co. of St. Louis, 330 Mo. 149, 49 S. W. (2d) 135, l. c. 143; Kelly v. City of Cape Girardeau, 227 Mo. App. 730, 60 S. W. (2d) 84, l. c. 87; Cromwell v. County of Sac, 94 U. S. 351; New Orleans v. Citizens' Bank, 167 U. S. 371, 42 L. Ed. 211; Nevins v. Coleman, 198 Mo. App. 252, l. c. 259, 200 S. W. 445; American Paper Products Co. v. Aetna Life Ins. Co., 204 Mo. App. 527, l. c. 535, 223 S. W. 820; Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S. W. 330, l. c. 332; St. Louis Dairy Co. v. Northwestern Bottle Co. (Mo. App.), 204 S. W. 281, l. c. 284.]

We have no quarrel with the authorities cited and the principles announced therein. The principles announced in each are sound. It will be noticed, however, that they deal only with situations where the causes of action are different and the suits are on different claims or demands. There is a distinction to be noted in the law applicable to such situations and to the situation where the two suits are upon the same cause of action. Thus, it is stated in Barkhoefer v. Barkhoefer, 93 Mo. App. 373, l. c. 381, 67 S. W. 674; and it is reiterated in American Paper Products Co. v. Aetna Life Insurance Company, 204 Mo. App. 527, l. c. 535 and 536, *supra*:

"The general rule in regard to former adjudications is that when the very cause of action once decided is again brought forward in a subsequent suit between the parties, the judgment in the first action is conclusive and constitutes a perfect bar to the prosecution of the second, as to all matters which might have been litigated therein, whether in point of fact they were or not . . .

"But the judgment in the first case enjoys no such prerogative if the second action is for a different cause of action from that contested in the first one; this is the distinction to be always seized as vital to the right determination of pleas of *res adjudicata,* and it will clear up a great deal of the confusion in the multitudinous decisions of the subject. In the second class of cases the judgment only concludes the parties as to points actually determined; that is, as to issues tendered or joined by the pleadings and decided; not those which might properly have been but were not; for the rights of parties ought not to be construed away."

2. Here, the causes of action are not different, but they are the same. The doctrine of the case of Barkhoefer v. Barkhoefer, *supra,* applies. The instant suit is not on a different claim or demand from that in the former suit, but is on the same claim and demand. The plaintiff in this case is suing for indemnities for loss of time from the same disability resulting from the same bodily injuries effected by the same accidental means as in the former suit. In the former

suit, he sued for and recovered indemnities up to January 11, 1933; and, in the present suit, he seeks to recover indemnities since January 11, 1933, from such date till September 11, 1935. The instant action is for continuing indemnities under the same policy or contract of insurance as that involved in the former suit. It is upon a continuing and recurring cause of action. The fact that it is for money not made the object of recovery in the former suit is immaterial. [State ex rel., Buchanan County v. Patton, 271 Mo. 554, 197 S. W. 353; Crnic v. Croatian Fraternal Union of America, 228 Mo. App. 251, 66 S. W. (2d) 161, l. c. 163; Crnic v. Croatian Fraternal Union of America (Mo. App.), 89 S. W. (2d) 683.]

3. The two Actions are based on the same legal right, on the same policy of insurance, and on the same disability resulting from the same bodily injuries effected by the same accidental means; and, although the present action is not for the same money actually involved in the former suit, the issues, matters, and facts determined in the former suit are *res adjudicata* of the same issues, matters, and facts to be determined in this suit.

It was said by this court in an opinion written by Judge SHAIN in Crnic v. Croatian Fraternal Union of America, *supra*, l. c. 163, of 66 S. W. (2d) 161: "It has been universally held by the courts of this state that judgments are conclusive in subsequent actions between the same parties on the same cause of action of all matters which might have been litigated in the former action. As to any fact that it was not necessary to prove in the former action, such former judgment of course is not conclusive. [Scheer v. Trust Co. of St. Louis et al., 330 Mo. 149, 49 S. W. (2d) 135; Casner v. Schwartz (Mo. App.), 286 S. W. 401; Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S. W. 330.]"

In the case of State ex rel., Buchanan County v. Patton, *supra*, l. c. 559 of 271 Mo., in disposing of the contentions of the respective parties in that case, the court said: "In order that a judgment may conclude the parties in a subsequent suit, the cause in which the judgment was rendered need not involve the same facts nor the same claim or demand which was adjudicated in a prior action; the test is whether there is an identity of issues. A former judgment is conclusive in a second suit between the same parties where the same legal right as that involved in the former suit comes again in issue, although the second suit is upon a different cause of action. This applies to successive suits brought on a continuing or recurring cause of action."

The Supreme Court of the United States, in the case of Southern Pacific Railroad Company v. United States, 168 U. S. 1, l. c. 48, 49, said: "The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly

determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.''

This statement of the law was followed by our State Supreme Court in the case of Case v. Sipes, 280 Mo. 110, l. c. 120, 217 S. W. 306.

Whether or not the plaintiff was totally and continuously disabled on account of bodily injuries effected by accidental means is an issue that is common to both the former suit and the present suit.

The policy sued on in both suits provides only against total and continuous disability by reason of bodily injuries effected directly by accidental means. The gist of the plaintiff's cause of action in the former suit and the gist of his cause of action in this suit is that he is totally and continuously disabled from performing any and every duty of his occupation as a piano tuner by reason of bodily injuries effected solely through accidental means. Until such facts were shown in the former suit, he had no right of recovery therein; and the court, until it found that such facts had been shown, had no right to enter the judgment therein in his favor against the defendant. The plaintiff could not have recovered in the former suit upon the mere allegation that he was temporarily disabled nor upon any allegation less than the one that he was totally and continuously disabled; nor could the court have rendered judgment in his favor upon a mere showing of temporary disability or upon the mere allegation that he was temporarily disabled.

4.  That the plaintiff's disability was total and continuous because of the loss of the part of his hand was determined in the former suit; and, since it was so determined in that suit that the loss of the part of the hand created total disability, it is *res adjudicata* in this suit that the loss of the same member is total disability; and, that such disability is continuous and permanent, the court will take judicial notice. The court must take judicial notice of the fact that a member of the body being completely severed is lost forever. [Paul v. Missouri State Life Ins. Co., 228 Mo. App. 124, 52 S. W. (2d) 437, l. c. 439.] The court takes judicial notice of things scientific or otherwise which are general knowledge. [Valley Spring Hog Ranch Co. v. Plagmann, 282 Mo. 1, 220 S. W. 1.] Thus, it must be held that the judgment in the former suit finding the plaintiff totally disabled for a period between June 11, 1932, and January 11, 1933, because of the loss of the greater part of his hand, is conclusive in this suit of the fact that the loss of the greater part of the hand in

fact totally and continuously disabled the plaintiff for all time to come; and, that such disability continued from January 11, 1933, to September 11, 1935, the court will take judicial notice. The court will take judicial notice that plaintiff's fingers and part of his thumb severed cannot grow back and that, being lost once, they are lost forever.

5. The trial court did not hold the judgment in the first suit to be *res adjudicata* of the fact that the plaintiff was totally and continuously disabled from January 11, 1933, to September 11, 1935. It did find, however, from the proofs, as recited in its findings of fact, that such judgment was conclusive in this cause as to the facts that the plaintiff, while said policy was in full force and effect, in the county of Audrain, State of Missouri, suffered the loss of the greater part of his right hand, including the fingers and a part of the thumb thereof, effected by accidental means which, independently and exclusively of all other causes, totally and continuously disabled the plaintiff from performing any and every duty pertaining to his occupation of piano tuner from the time of the accident to the time of the filing of his petition therein on January 11, 1933, and that the plaintiff performed all of the terms and conditions of the policy of insurance on his part to be performed. It further found that the bodily injuries here sued for are the same bodily injuries for which suit was instituted and for which recovery was had in the former suit; that, by said bodily injuries, plaintiff had been totally and continuously disabled from performing any and every duty pertaining to his occupation, which at the time of said accident was that of a piano tuner, from the date of such accident to the time of the trial and judgment in this cause.

It is shown by the evidence in this case that plaintiff's condition was no different at the time of the trial than it was on January 11, 1933, the date to which he made recovery in the first suit; that his hand was entirely healed prior to January 11, 1933; and that he was not disabled because of any condition of nonhealing or tenderness thereof at the time of the former judgment but that his total disability resulted from the loss of a part of his hand. The evidence shows that his hand was in the same condition throughout the period from January 11, 1933, to September 11, 1935, that it was on and prior to January 11, 1933. This evidence was sufficient upon which to base the court's finding that the plaintiff was totally and continuously disabled, on account of the injuries accidentally received, from June 11, 1932, to the time of the trial in the present suit. The finding of the court, being supported by the evidence, must, therefore, be sustained.

6. We cannot concur in the view presented by the defendant that plaintiff, in the former suit, did not allege that he was permanently

disabled and that there was, therefore, no issue in the former suit as to his permanent disability in the face of the fact that plaintiff's petition in the former suit does allege that he was "totally and continuously disabled" and that such were the terms used in the policy. Such expression, "totally and continuously disabled," implies permanency. The word "continuous" means "connected, extended, or prolonged without cessation or interruption of sequence." The words "totally and continuously disabled" must be given the same meaning as would be given the words "totally and permanently disabled" if such words had been used instead. The defendant itself, in its endorsement of January 3, 1930, uses the words "totally and permanently" disabled as synonymous with the words "totally and continuously." To allege that he was "totally and continuously disabled" is to allege that he was "totally and permanently disabled."

Plaintiff was entitled to recover in the former case only upon the theory that the disability for which he was seeking to recover indemnities therein was total and continuous; in the absence of such a showing, he was not entitled to recover. The court found that his disability was total and continuous.

7. The defendant contends that, plaintiff having been a witness in his own behalf and having failed to testify to the disability alleged in his petition between January 11, 1933, and September 11, 1935, an inference is to be drawn therefrom that he refrained from testifying because, if the truth as to such continuing disability could have been made to appear, it would not have aided his contention; and defendant cites as authority therefor, 22 C. J., pp. 121, 122, sec. 57; Givens v. Spalding Coat Co., 228 Mo. App. 169, 63 S. W. (2d) 819; Sanders v. Kaster (Mo.), 222 S. W. 133, l. c. 135; Connecticut Mutual Life Insurance Co. v. Smith, 117 Mo. 261, 22 S. W. 623.

That such an inference may be drawn is shown by the authorities cited, where the failure of the witness to testify is not in some manner otherwise explained. In this case, however, plaintiff was asserting that all such facts as to his disability were established by the former judgment and that such judgment was *res adjudicata* as to such matter and, therefore, with the court's sanction, declined to testify on the trial with respect to such matter. He was clearly within his rights.

8. Defendant further contends that the plaintiff failed to prove a request made on the defendant for the payment of the indemnities for which he sues prior to the filing of the suit and failed to show that he made due proof of his disability, as conditions precedent to his right to demand payment and to recover; that, by the terms of the policy, defendant agreed to pay monthly indemnities only

upon request so to do and upon due proof of disability; and that, by reason of plaintiff's having failed to make any request for the payment of the indemnities sued for prior to the filing of his suit and having failed to make proof with respect to his continued disability, he cannot recover herein. It contends that plaintiff does not claim that any request for continuing disability was made but that he merely alleges in his reply a waiver of such proof, of which waiver he did not offer to make proof and of which waiver there is no evidence in the record; that defendant in its answer·denies liability because of plaintiff's failure to make proof and to make request and denies that it waived such proof. However, the purposes of proof of disability are to inform the defendant of the particulars of the disability and give it the data necessary to determine its liability. [33 C. J., p. 17, sec. 665.] Such proof was made in and by the former suit as well as prior to the institution thereof; and, by that former suit, the plaintiff established his right to recover for total disability, according to the terms of the policy, so long as he lives. It is a well-settled principle that the law does not require useless action. ·[Crnic v. Croatian Fraternal Union of America, *supra*, 228 Mo. App. 251, 66 S. W. (2d) 161.] The defendant in this case had notice of all of the facts before the institution of the present suit. Further proof of disability was unnecessary.

9. So far as the defendant's contention that the plaintiff must have made a request for the monthly indemnities is concerned, it is not tenable.

Standard Provision 9 of the policy reads as follows: ''All indemnities provided in this policy for loss other than that of time on account of disability will be paid within sixty days after receipt of due proof.''

Indemnity in this suit is for loss of time as provided by Part B of the policy and, therefore, does not come within the provisions of Standard Provision 9 as quoted. The request provided for in Standard Provision 10 is not required as a condition· precedent to the right to sue for monthly indemnities.

The provisions of Standard Provisions 9 and 10 were up for consideration by this court in the case of Wollums v. Mutual Benefit Health & Accident Association, 226 Mo. App. 647, 46 S. W. (2d) 259, l. c. 267, 268. The court there held that, by the terms of the policy, it was provided that all indemnities provided by the policy for loss, other than that for loss of time on account of disability, would be paid within sixty days after receipt of due proof and that indemnities for loss of time on account of disability would be paid at the expiration of each month during the continuance of the period for which the association was liable and that any part remaining unpaid at the termination of such period would be paid immediately

on receipt of due proof. In that case, the court had before it an instruction given for the plaintiff which permitted the recovery of six per cent interest on the monthly installments from the date said installments became due and which told the jury that such installments were due at the end of each month of the disability. This court, in passing on such instruction, said: "The instruction properly submitted the terms of the policy to the jury as to the time in which the monthly indemnity should be paid. If defendant wanted to protect itself against the payment of the indemnity until after the proofs of loss were made it could have done so in the policy (as it did in reference to indemnity other than on account of disability), but in this instance it did not." It may be added here that, if defendant had desired to protect itself against the payment of monthly indemnities until after the insured demanded them, it could have done so in unequivocal terms, which, in the present case, it did not.

10. The defendant also contends that there was error upon the part of the trial court in allowing plaintiff interest on the monthly indemnities in the absence of any proof that request was made monthly for their payment and in the absence of any proof of continuing disability made each month. This contention must be ruled against defendant under the authority of Wollums v. Mutual Benefit Health & Accident Association, *supra*. That case, in addition to holding that the monthly indemnities agreed to be paid for loss of time under such provisions as those in the policy in question were required·to be paid at the expiration of each month during the continuance of the period for which defendant was liable and without sixty days' notice and without proof of disability and request for their payment, holds that Section 2839, Revised Statutes 1929, applies to insurance contracts such as the one involved herein.

Such section is as follows:

"Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts . . ."

The policy in question herein is a written contract by which defendant agrees to pay indemnity in monthly payments; and, under the statute, the payments bear interest from the time due. The time when they become due does not depend on any request therefor or on any proof of continuing disability. Interest in the present case does· not depend on any question of demand but on the statute.

11. The defendant contends, again, that the court committed error in including judgment for indemnities for the months beginning July 11, 1935, and August 11, 1935, after plaintiff had voluntarily waived them in his petition. However, it does not appear from the

judgment that they were included therein; but, upon the contrary, it appears that they were not.

12. The defendant contends that plaintiff cannot rely upon any presumption of disability between January 11, 1933, and September 11, 1935. We have been unable to find that plaintiff relies upon any such presumption.

13. The defendant next contends that the trial court erred in giving plaintiff's finding of fact A to the effect that, under the evidence, plaintiff has been totally and continuously disabled from performing any duty pertaining to his occupation from January 11, 1933, to September 11, 1935 (the period covered by his petition), because there is no evidence in the record showing such disability. From what has been said, it is clear that we cannot concur in this view.

14. It further contends that such finding of fact was erroneous in that there was no evidence that plaintiff had complied with the terms of the policy with respect to proof of disability during the period sued for or with respect to any request by plaintiff for the payment of monthly indemnities sued for or with respect to any notice of his claim. Such contention, in view of what has heretofore been said, must be denied.

15. There was no error in plaintiff's declaration of law No. 2, nothwithstanding defendant's contention to the contrary. The defendant is concluded by the judgment in the former suit from its contentions in this case that no proof of disability was made by plaintiff prior to the former suit, as required by the policy. Having made proof of disability in the former case, plaintiff is not required to make further proof of such disability in order to maintain this suit. The former suit was in itself sufficient notice to defendant by plaintiff of his disability in order to maintain the present suit.

16. The defendant's contention that there was error in plaintiff's declaration of law No. 3 is not, in view of what has already been said herein, well made. It has heretofore been held herein that payments of monthly indemnities become due at the end of each month, regardless of whether any request for payment was made monthly by plaintiff.

17. The defendant contends further that the court erred in refusing to give defendant's requested instructions D-1 and D-2, in the nature of demurrers to the evidence, and D-4, declaring that, unless plaintiff had shown that he made proof of continued disability and had given notice of his claim, he could not recover. In view of what has been heretofore said herein, this contention, so far as it relates to any of such instructions, must be denied.

18. The defendant contends that the court erred in refusing its requested declarations of law D-5, D-6, D-7, and D-8. Each of these

declarations of law conflicts with declarations given for the plaintiff. We have held that the declarations given for the plaintiff were proper. There was no error upon the part of the court in refusing defendant's requested declarations.

19. Defendant finally complains of the refusal of its declarations of law D-11 and D-15. D-11 relates to the right of plaintiff to bring the present suit prior to the expiration of sixty days after proof of his disabilities and is to the effect that, if plaintiff had failed to show that he had made proof of his disability over sixty days before filing this suit, he could not recover. That there was no error in refusing such declaration is shown by what has heretofore been said herein.

20. Likewise, there was no error in the refusal of declaration of law D-15. Such declaration was requested upon defendant's theory of the case as to the conclusiveness of the former judgment herein, which theory fully appears from the record. Such theory has been fully considered and found not to be the proper one to be followed and applied.

We have disposed of all the assignments of error and points made by the defendant upon its appeal from the judgment against it. We find no reversible error in the case of which defendant may complain upon its appeal; and the judgment should be affirmed, except for error hereafter noted upon plaintiff's cross appeal, to a consideration of which cross-appeal we now proceed.

21. The plaintiff, by such appeal, challenges the action of the trial court in automatically reducing the amount of monthly indemnities to which he was found entitled after September 28, 1934 (his fifty-fifth birthday), from $100 per month to $66.66 2/3 per month and in allowing such indemnities after said date at the rate of $66.66 2/3 per month only instead of at the rate of $100 per month in computing the amount of the judgment in his favor and contends that the action of the court in such respect was erroneous and that the judgment in his favor should have been computed throughout on the basis of monthly indemnities at the rate of $100 per month.

Whether the action of the court in such respect was erroneous or otherwise depends on the construction and effect to be given the provisions of Additional Provision N in the policy sued on, which are as follows:

"The term of this policy commences upon the date hereof and runs until the Insured's Sixty-Fifth birthday subject to payment of the required premium. When the Insured passes his Fifty-fifth birthday all indemnities thereafter accruing under this policy, will be·automatically reduced one-third."

The trial court, in computing the amount of the judgment, adopted the view that, by the provisions of said provision, the monthly indem-

nities to which plaintiff was entitled accrued only as they became due and payable from month to month and the plaintiff could not recover for these thus accruing after he passed the age of fifty-five years at the full rate of $100 per month; but thereafter could recover for only two-thirds of such sum; and it rendered its judgment accordingly.

22. The plaintiff contends that such indemnities accrued and a right to the same at the rate of $100 per month became fixed and vested in him at the time of his accidental injuries.

However, it is to be observed that it was only a right to demand and recover the indemnities provided by the policy as they thereafter accrued and became due and payable that became fixed and vested in him at that time. There was no right to demand the immediate payment of any or all of such indemnities at that time that vested in him as an enforceable right at that time, but such right to demand such indemnities and enforce a claim therefor was deferred until such time as they thereafter accrued and became due and payable from month to month.

There is a clear distinction between the accrual and vesting of a right for indemnities as they become due and payable in the future and the accrual of a right to make immediate demand for their payment and to enforce such demand. Such indemnities may never accrue and become due and payable. In this case, had plaintiff died before the indemnities sued for became due and payable, his right to have enforced a demand therefor would never have accrued and existed.

The word "accruing" as used in Additional Provision N of the policy does not relate to the accrual of a right in the plaintiff to demand and enforce the payment to him of the indemnities under the policy as they matured and came into existence, but clearly relates to the time when said indemnities became due and payable, if ever, from month to month and when a cause of action should accrue in plaintiff to enforce his claim therefor. The word "all" was meant to include all indemnities coming due and payable under the policy after the plaintiff reached the age of fifty-five years— that is, all indemnities on account of total disability resulting from bodily injuries or from disease or other causes for which indemnities are provided under the policy. Neither does Additional Provision N relate to indemnities which had accrued and become due and payable under the policy prior to the time plaintiff reached the age of fifty-five years.

23. An examination of the provisions of the policy discloses that it begins with the statement that this policy is "non-cancellable and provides Indemnity for the loss of —— time by accidental means ——to. the extent herein provided." This statement is followed by

the insuring clause, by which insurance is granted to the plaintiff, as a piano tuner, against loss resulting solely from bodily injuries effected "directly and independently of all other causes" through accidental means and against disability by disease, subject to all of the provisions and limitations thereinafter contained in the policy.

Incorporated in the insuring clause and at the beginning thereof, the following statements appear: "The Principal Sum of this Policy is $5000.00. The Monthly Indemnity of this Policy is $100.00."

Among the provisions of the policy to which the insurance granted by the insuring clause therein is made subject are the provisions of Part B to the effect that, if such bodily injuries insured against should totally and continuously disable the insured from performing any and every duty pertaining to his occupation, the defendant would pay a monthly indemnity at a rate in said policy before specified, as appears from said Part B in said policy which refers to total and permanent disability and to total loss of time and which is as follows: "Or, if such bodily injuries, independently and exclusively of all other causes, totally and continuously disable the Insured from performing any and every duty pertaining to his occupation, the Company will pay, subject to Part 1, beginning with the First day of such disability, a monthly indemnity at the rate of the monthly indemnity hereinbefore specified for the period of such continuous total disability." The provisions of Part B are not made subject to any other provisions of the policy, except Part I, which relates to the aggregate amount of indemnities to be paid and to the payment of the premiums required upon plaintiff's part.

By Part E of the policy, it is agreed that the sole condition for the continuance of the policy during its term shall be the timely payment by the plaintiff of the premiums and that disability indemnity should begin with the first day of any period of disability. The agreement with reference to the beginning of the disability indemnity with the first day of the period of disability was afterward, by agreement endorsed on the policy, so modified as to relieve the defendant from any liability on account of the first thirty days of the existence of such disability.

By another endorsement on the policy to the effect that if, in the event of any disability covered by the policy and originating during the term thereof before the aggregate indemnity of $5000 thereunder has fully accrued, the plaintiff should be adjudged by competent authority to be totally and permanently disabled, within ninety days after the date of the accrual of the full aggregate indemnity, the defendant would continue to pay, so long as the insured lives and suffers such permanent disability, the monthly indemnity provided by the policy, regardless of any limitations as to aggregate indemnity.

By Standard Provision I of the policy, the policy is made to include all endorsements made thereon.

The insurance granted plaintiff by the insuring clause of the policy, is, by Part B thereof, subject to Part I, made to be the monthly indemnity provided by the insuring clause of the policy at the rate of $100 per month, beginning with the first day of such disability and continuing for the period of such disability, subject only to the condition of the payment by plaintiff of the premiums required of him by the terms of said policy and to the provision afterward endorsed on such policy to the effect that the total of all such indemnities and other indemnities under other parts of the policy shall not be greater than the equivalent of the indemnities for fifty months or not in excess of the sum of $5000. Here the record shows that plaintiff has complied with all of the conditions of the policy required of him, which include the payment of the premiums.

By Additional Provision N of the policy, it appears that, in addition to the clause that occasions the controversy herein, it is agreed that the term of the policy commences with its date and runs until the insured's sixty-fifth birthday, subject alone to the payment of the required premiums. The latter clause of Additional Provision N whereby it undertakes to reduce the amount of such monthly indemnities from $100 to $66.66 2/3 per month, is clearly repugnant to the provisions of Part B of the policy, which precedes it and fixes the amount of the monthly indemnity at $100. By Part B, the agreement to pay is unequivocal, as likewise is the amount agreed to be paid monthly. Part B is not made subject to any of the provisions of the policy other than those requiring the payment of premiums and those of Part I which, as hereinbefore stated, relate simply to the aggregate amount of the indemnities to be paid. The latter clause of Additional Provision N, under such circumstances, cannot stand. Under such circumstances, Part B governs. [Caine v. Physicians' Indemnity Co. of America (Mo. App.), 45 S. W. (2d) 904; O'Connor v. St. Louis American League Baseball Co., 193 Mo. App. 167, 181 S. W. 1167; Lamaitre v. National Casualty Co., 195 Mo. App. 599, 186 S. W. 964.]

Where several provisions of a contract of insurance are to be regarded as antagonistic and as raising an ambiguity as to the meaning of said contract, the insured is entitled to the construction thereof which is most favorable to him and which provides him the greater indemnity, so long as the language of the contract fairly warrants the construction. What was said by Judge RAGLAND for the Supreme Court in State ex rel., Mills Lumber Co. v. Trimble, 327 Mo. 899, 39 S. W. (2d) 355, l. c. 358, 359, may well be quoted here:

"'Speaking to insurance contracts, it is a just and settled rule that their restrictive terms shall be taken most strongly against the

insurer. The doctrine of *contra proferentem* is strictly applied with unaccommodating vigor, and, as said, ambiguities are blandly resolved in favor of the insured. So that, if the contract in suit is open to two constructions, one favorable to the insured and one not, if the insured has acted on the favorable construction, courts will take his view of the contract, being always mindful that the principal obligation (the very life and soul) of a policy is to pay the policy face when the contingency or event happens upon which payment is predicated. . . .

" 'Policies are contracts, elaborately and shrewdly prepared in advance by calculating and astute experts. They are tendered, ready made, to and accepted out of hand by plain people, the uninformed and unlearned, the unwary and confiding. Insurance policies swarm with intricate technical provisions, stipulations, exceptions, conditions, provisos, limitations, hedging liability about and looking to its avoidance. It is not singular, then, that courts incline to pit judicial astuteness against the astuteness of the policy maker; the latter planting forfeitures in ambush or open, and the former striving to avoid them.' [Mathews v. Modern Woodmen, 236 Mo. 326, 342, 343, 344, 139 S. W. 151, 155, Ann. Cas. 1912D, 483.]

" 'Conditions and provisions in policies are to be construed strictly against the company as they tend to narrow the range and limit the force of the principal obligation. Conditions providing for disabilities and forfetitures are to receive, where the intent is doubtful, a strict construction against those for whose benefit they are introduced. . . .

" 'It is elemental that if a contract of insurance is capable of two meanings, that meaning must be adopted which is most favorable to the insured. [Wharton on Contr., sec. 670; Bliss on Ins., sec. 385; Cook on Ins., sec. 4.] And so we have declared it to be a rule of construction in cases where there is a doubt in respect to the meaning of the terms of a clause in an insurance policy that the doubt must be resolved in favor of the interpretation of the assured, although otherwise by the insurer.' [Renn v. Supreme Lodge, K. P., 83 Mo. App. 442, 447, 449, cited by this court with approval in Mathews v. Modern Woodmen, *supra,* and other cases.]

" 'The provisions in a policy, limiting or avoiding liability, must be construed most strongly against the insurer.' [St. Louis Court of Appeals in Howell v. Life Ins. Co., 215 Mo. App. 692, 253 S. W. 411, 412, approved by this court in, State ex rel. v. Allen, 305 Mo. 607, 614, 267 S. W. 379.]"

24. The various provisions of the policy in question are legitimately subject to the construction which the plaintiff has put upon them—that is, that the defendant insured him against total and continuous disability from bodily injuries effected solely by accidental

means and the loss of time on account thereof and agreed to indemnity him therefor in the sum of $100 per month. We are of the opinion that the trial court reached the wrong conclusion in giving to the latter clause of Additional Provision N the effect that it did and in computing the amount of its judgment for plaintiff at the rate of $66.66 2/3 per month after he reached the age of fifty-five years instead of $100 per month covering such time and that, in so doing, it committed reversible error.

It is unnecessary to discuss the many and various other points raised by counsel for the respective parties in their respective briefs.

The judgment of the trial court is accordingly reversed; and the cause is remanded upon plaintiff's appeal with directions that, upon a re-trial, the court proceed in accordance with the views herein expressed, not only upon the appeal of the defendant but upon the appeal of the plaintiff. All concur.

ON MOTION FOR REHEARING—ADDITIONAL OPINION.

REYNOLDS, J.—The original opinion herein, wherein it remands the cause for retrial, is modified; and, the judgment having been reversed upon appellant-respondent's appeal, this cause is remanded to the Circuit Court with directions to that court to enter judgment for the plaintiff and against the defendant as prayed in plaintiff's petition and for the sum of $3466 and costs, $3000 of which shall bear interest at the rate of six percent. pet annum from February 1, 1937 (the date on which the original opinion herein was handed down), until the entry of such judgment by the Circuit Court be made and thereafter until such judgment be paid.

We have all of the facts in the record. A new trial is unnecessary. All concur.