**MERCANTILE–COMMERCE BANK & TRUST CO. et al. v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.**

No. 699.

District Court, E. D. Missouri, E. D.

March 8, 1945.

Cobbs, Logan, Roos & Armstrong, and William H. Armstrong, all of St. Louis, Mo., for plaintiff.

Jones Hocker, Gladney & Grand, James C. Jones, Jr., and Orville Richardson, all of St. Louis, Mo., for defendant.

HULEN, District Judge.

This action (on jury waived trial) to recover disability benefits and return of premiums on life policy, is before this court for the second time. On the first trial judgment went for plaintiff. D.C., 48 F. Supp. 561. On appeal, the finding of the trial court that the "insured was totally and permanently disabled" during the period in question was affirmed, but the case was remanded for "findings, conclusions, and judgment as to the sufficiency of the proof of loss," of the claimed "continuous" disability extending through the period involved, with the right to either party to introduce additional evidence "directed ·to this matter." The period involved is from March, 1932, to April, 1939.

We understand plaintiff's position to be that the record as now made evidences due proof of total and permanent disability to cover the period involved: first, that defendant knew of the insured's heart condition as early as 1920 and that the heart ailment was a permanent condition; that defendant knew of the progressive character downward of the disease when it received and paid the claim for disability on account thereof, commencing in 1930; that from the information in the possession of the defendant at that time, the probable deduction to be drawn was that the insured would thereafter for life be totally and permanently disabled; that his condition would not improve; that no change in such knowledge resulted thereafter; and that defendant's agents were aware of insured's condition during the period involved; and, second, that defendant accepted the documents tendered by the insured in 1930 as due proof of the insured's total and permanent disability.

As to plaintiff's first position, the following facts appear from the record now before this court: In November, 1920, the insured sought insurance from the company. He was examined by the company's "medical referee." Because of his physical condition, the company was "unable to consider—applicant for insurance on any plan." The insured at that time had a heart beat of "thirty-four" as compared to a normal of around seventy. In the fall of 1921, the insured applied for the two policies in suit. In the application, under heading "Have you ever had or been treated for any disease or disturbance of: * * (c) the heart or blood vessels," the insured entered the words "except slow pulse."

Insured's pulse at that time was thirty-six. The policies were issued, but because of the insured's heart condition, he was rated as a sub-normal risk, and the policy premium rated up. On February 6, 1925, insured again applied to the company for insurance and called attention to "slow pulse." At that time insured was examined by the company's home office medical director. Insured's pulse at that time was thirty-eight. A heart chart was obtained. For the first time, evidence was found of a systolic murmur. There was some delay in issuing the policy, and insured was again examined on May 22, 1925. At this time his pulse rate was forty. The policy was issued on a sub-standard risk basis, and rated up on the same premium as the policy issued in 1921. In December of 1925, the insured applied for a reduction in rates on the policies which the company had issued to him. He was examined in December of 1925, at which time his pulse rate was forty-four. He was examined by the company on January 4, 1926, which confirmed the systolic murmur first found in February of the previous year. Following these examinations, the company reduced the rates on insured's policies to a "Q" rating—still not standard. In December of 1926, insured again applied for insurance in the company and certain policies were issued after physical examination. The rate on these policies was advanced to "R". This was subsequently reduced to a "Q" rating. Slow pulse and systolic murmur were the only abnormal conditions reported by the examining physicians between 1920 and 1930. In May of 1930, the insured suffered "Stokes-Adams" attacks. There was evidence that this is indicative of a permanent and serious heart ailment associated with and a probable result of heart block. Stokes-Adams disease is usually associated with senile degenerative change of the heart and vascular system and is stated to be due to impairment of conductivity in the muscular fibres (bundle of His) which transmit the wave of contraction from auricle to the ventricle of the heart. At this time the insured was confined to a hospital and later to his home. On October 23, 1930, on blanks furnished by the company, the insured applied for blanks for making proofs of total and permanent disability on the policies issued by the company in 1921 (other policies issued by the company are not involved in this case). This application was filled in by the company's representative, and in answer to the printed

question, "The insured expects to return to work on ———," the word "indefinite" was written. The nature of the illness or disease is given as "heart block." On October 25, 1930, the insured filed disability claim on form furnished by the company. Portions of this claim are: "Date you expect to resume some business duties." The answer is "Have no idea." The form furnished by the company concludes as follows: "12. On the 29th day of May, 1930, I became wholly disabled as a result of heart trouble and have been continuously and wholly prevented thereby from pursuing any and all gainful occupations and by reason of such disability I now make claim for the protection in the event of total and permanent disability as provided in the said policy."

The affidavit of two attending physicians accompanied the claim (Defendant's Exhibits 3 and 4). Exhibit 3 is the affidavit of Dr. Taussig. Answer to the question: "What history of previous illness was given to you by insured?" is, "History of long continued heart block." The question, "Has the claimant any other disease, acute or chronic, or has claimant ever had any infirmity or injury?" is answered, "Only as above," referring to "History of long continued heart block." The question: "Is he able to pursue his or any other gainful occupation?" is answered "No." The time of such disability is given as "Since early in May, 1930." The claim blank contains this question, "How soon in your opinion will he be able to resume any business—approximate date." The answer is, "Do not know." Questions and answers 11, 12, and 13 of the claim blank are as follows:

"11. Describe fully, Diagnosis and symptoms of injury, infirmity or disease causing present disability, with brief description of Physical Findings.—*Symptomless heart block for many years. In May, 1930 a sino-auricular block set in with long periods of asystole and Adams-Stokes syndrome.

"12. Results of special examinations, laboratory tests and X-rays. a. Repeated EKG b. When were the above examinations made? During June, 1930

"13. a. Do you believe that the claimant is so disabled and that he is wholly prevented from pursuing any and all gain-

ful occupations? Yes b. Is this total disability only temporary? *Probably. c. Is it possible that he will be prevented for life from following ANY occupation? Possibly."

Exhibit 4 is the affidavit of Dr. Smith. Dr. Smith stated that the insured was not able "to pursue his or any other gainful occupation," "since early in May, 1930." In answer to question as to how soon the insured would be "able to resume any business," the answer of Dr. Smith was the same as Dr. Taussig—"Do not know." In answer to the question, "Is claimant's condition growing worse?" Dr. Smith answered, "? Has myocarditis." Dr. Smith's answers to paragraphs 11, 12 and 13 of the affidavit form furnished by the company differ from those of Dr. Taussig. The questions and answers are as follows:

"11. Describe fully, Diagnosis and symptoms of injury infirmity or disease causing present disability, with brief description of Physical Findings. Patient had heart rate 36 to 44 for about 12 years, was comfortable. During 1930 developed arhythmia. Rate went to 60 and 80 and would change suddenly. Patient would almost faint. Electro cardiogram showed eleven seconds of asystole.

"12. Results of special examinations, laboratory tests and X-rays. a. Repeated electrocardiographic tracing. b. When were the above examinations made? June, 1930, at Jewish Hospital, St. Louis.

"13. Do you believe that the claimant is so disabled and that he is wholly prevented from pursuing any and all gainful occupations. Yes. b. Is this total disability only temporary? Don't know. c. Is it possible that he will be prevented for life from following ANY occupation? Yes."

The company asked for no clarification of the answers of the doctors to questions in forms supplied by it, and paid total and permanent benefits (less the first ninety days, which deductions were protested by the insured) until March of 1932, when the insured wrote the company a letter containing the following paragraph: "I wish to advise you that I am back at my desk for short periods each day. I hope to regain my strength sufficiently to be able to continue at work and unless you hear from me to the contrary before the end of the

---

* Emphasis indicates statements of doctors.

* Emphasis indicates statements of doctors.

month, you need not send the checks on the above claims."

Marshall W. Bradley, a representative of the company, visited the insured during the period of 1930 to 1932. He testified: "When I learned of Mr. Comfort's illness, I considered it my duty as a representative of Equitable to facilitate and help Mr. Comfort in every way to establish his claim. I did just that."

After Mr. Comfort went back to his office, as referred to in the letter of March 15, 1932, Mr. Bradley visited him on a number of occasions. He knew he had a lounge at the office that he took daily rest on and "I was not allowed to see him at that time."

He saw him frequently during the period involved, subsequent to 1932, and testifying with reference to his appearance, stated, "I rather wondered that he looked as well as he did. I think—he was a marvel to me. He looked so well after his spell of illness." On cross-examination he stated, with reference to the expression concerning the insured's appearance, to-wit "that he marveled at it"—

"Q. That is because you knew he *was* a sick man? A. Yes, sir."

The plaintiff offered two witnesses, Dr. Kuntz and Dr. Luten, specialists in heart diseases. The testimony of Dr. Kuntz, based upon information shown to have been possessed by the company in 1930, was: that the insured had a complete heart block since prior to 1920; the heart block was classified as "acquired"; the course of such ailment "is most always progressively downward—"; it is a degenerative process of the body; Stokes-Adams attacks were described as the probable result of "acquired" heart block; during Stokes-Adams attacks there is a stopping of the ventricle and the heart ceases to beat for a period and may cause death. Dr. Kuntz drew the conclusion from the information possessed by the company in 1930, and based on medical knowledge generally known as of that time, that insured had a complete heart block and the probabilities were that he would develop Stokes-Adams attacks and that his condition would grow worse; that he would have temporary periods of improvement, but over a period of time, "It is always progressive down hill." Dr. Luten testified that patients with Stokes-Adams attacks "usually progress downward." Testimony of a similar character was given by Dr. Taussig and Dr. Smith at the first trial.

Defendant offered the evidence of physicians who were also specialists in heart ailments. Their testimony was in conflict with that of witnesses offered by plaintiff as to the progress of a condition, evidenced by information possessed by the company in 1930, regarding the insured. Some of the testimony offered by defendant served to elicit opinions that insured was not totally and permanently disabled either in 1930 or during the period involved; opinions in some instances not based on the facts of this case, or only part of the facts, and, in some instances, about matters that are no longer issues in this case. The law governing lays down no hard and fast rule by which a case may be declared to stand or fall on sufficiency of due proof of permanent and total disability, but we find certain general principles, fairly uniform in the decisions of the appellate courts.

Plaintiff has the burden of showing due proof was furnished of insured's total and permanent disability during the period involved. The term "due proof of loss" is not to be confused with the technical expression "proof of loss," which has a definite meaning in law. "Due proof of loss" is less formal. Standard Accident Insurance Co. v. Bennett, 8 Cir., 16 F.2d 721, 49 A.L.R. 1524. The object of the proof is to furnish the company with the particulars of the loss and all data necessary to determine its liability and the amount thereof. Boillot v. Income Guaranty Co., 231 Mo.App. 531, 102 S.W.2d 132, loc. cit. 141. The requirements to meet the policy provision for "due proof" of total and permanent disability are stated in 3 Appleman, Insurance Law and Practice, § 1444, p. 62: "Such a provision (due proof) is generally considered to require reasonable proof of the existence of the conditions upon which the claim under the contract is based, but does not require any particular form of proof which the insurer may arbitrarily demand. No particular form is required, in the absence of showing to the contrary by the context of the policy. A rule of common sense, or reasonableness, is usually applied."

We quote from the same author on "Proof of Total and Permanent Disability," 3 Appleman, Insurance Law and Practice, § 1446, p. 70: "Such proofs (of permanent disability) are not required as the insurer should desire or arbitrarily demand,

but rather such proof as the particular case might admit in the judgment of the court trying the litigation. Citing Prudential Ins. Co. of America v. Litzke, 1935, 6 W. W.Harr. 592, 179 A. 492. But no such proof is required as would justify a recovery in a court of law. Citing Janney v. Scranton Life Ins. Co., 1934, 315 Pa. 200, 173 A. 819."

The rulings of the appellate courts of the State of Missouri appear to be in harmony with the principles announced by Appleman. See the case of Hablutzel v. Home Life Insurance Company of New York, Mo.App., 52 S.W.2d 480, loc. cit. 483, affirmed by Supreme Court, 332 Mo. 920, 59 S.W.2d 639.

■ That insured was totally and actually permanently disabled during the period involved and thereby liability under the total and permanent disability provisions as provided by the policies came due, subject to compliance by insured with the terms of the policy as to due proof of loss, is no longer open to question, having been decided by the District Court and such ruling approved by the Court of Appeals. Where liability has become fixed the courts are reluctant to deprive insured of the benefits under it by any narrow or technical construction of the conditions which prescribe the formal requisites by means of which the accrued right is to come into fruition. Schuerman v. General American Life Insurance Company, 232 Mo.App. 352, 106 S.W.2d 920.

■ Much of the argument and briefs supplied by counsel for the company urge on the court that the insured be held to a rule that the proofs must show conclusively that the insured will be totally and permanently disabled the remainder of his life. We do not so understand the law. Due proof need point only with reasonable certainty to total and permanent disability. Travelers Insurance Company v. Cadena, 1936, Tex.Civ.App., 91 S.W.2d 1112.

■ Defendant cannot escape the conclusion, from the record, that in 1930 it had before it the nature of the insured's disease from 1920, that it had grown progressively worse, and that the insured had reached the point where, among other serious heart ailments, he was suffering from Stokes-Adams attacks. Qualified medical opinion would have concluded in 1930 from the physical condition of insured then known by defendant to be existing, which was total disability, that insured's condition of total disability would probably grow progressively worse until his death. Such due proof met the test of a reasonable showing of total and permanent disability under the terms of the policy. Forman v. New York Life Insurance Company, 267 Mich. 426, 255 N.W. 222. We deem it fair that defendant be charged with that knowledge of insured's condition which general medical knowledge would indicate as reasonably probable as of the time the information was furnished, from the information possessed by the company.

The defendant singles out certain portions of the information in its possession in 1930, and basing its argument on such isolated facts, draws deductions, which are supported by authorities cited, that the proof falls short of showing a state of total and permanent disability of insured. Such segregation of the testimony cannot be the basis of the court's findings.

■ Defendant lays stress upon the answers of Dr. Smith and Dr. Taussig contained in the "proofs;" that they did not state when the insured would be able to resume his business, failed to state that he would never be able to do so; that one of these physicians stated he did not know whether the insured's then total disability was only temporary and the other stated that "probably the total disability was only temporary." It was not required of insured that he furnish conclusive due proof that he would never be able to resume his occupation, and absolute and unequivocal opinion of doctors that he would be disabled for life. Wray v. Equitable Life Assurance Society, 129 Neb. 703, 262 N.W. 833.

Defendant complains of the answer "Do not know" in the affidavits of Dr. Taussig and Dr. Smith, following the question as to how soon insured will be able to resume his business. Under all the circumstances of this case, the term used is equivalent to the word "undetermined," as used in the case of Prudential Insurance Company v. Litzke, 1935, 6 W.W.Harr. 592, 179 A. 492. There the court, commenting upon use of that term by a physician in proof of claim, held the word meant that there was then no reasonable or apparent prospect of recovery from pulmonary tuberculosis.

Defendant further complains about the doctors' answer to the question, "Is it *pos-*

*sible* that he will be prevented for life from following any occupation?" Dr. Taussig answered this question, "Possible." Dr. Smith answered this question, "Yes." There is no difference in meaning between these two answers.

We believe it should be given passing notice that the information now complained of by the defendant as being indefinite was furnished to the defendant on forms prepared by it, and that defendant at the time the information was furnished neither made complaint as to the information being indefinite nor asked for additional information. Garden v. New England Mutual Life Insurance Company, 218 Iowa 1094, 254 N.W. 287, loc. cit. 289.

■ As to the different deductions drawn from information in defendant's possession in 1930, by witnesses offered by plaintiff and defendant, it is not required that the insured in its proof of loss present an undisputed state of facts or a state of facts on which the insurer could arrive at but one conclusion as to its liability. Corcoran v. Metropolitan Life Insurance Company, 1936, Mo.App., 93 S.W.2d 1027, loc. cit. 1029.

It is our opinion that the history of the case before the company in 1930, together with the proofs of loss then furnished, showed to a reasonable certainty that total disability of the insured would continue for an indefinite period of time, viewing the evidence most favorably to defendant. When to this is added what deductions medical opinion would have concluded from the information in defendant's possession, at that time, the record shows with reasonable certainty that the total disability would be permanent. See 3 Appleman Insurance Law and Practice, supra, § 1446 p. 70.

■ Did the defendant receive notice or information upon which such a conclusion could reasonably be based, subsequent to 1930 that insured was no longer totally or permanently disabled? The letter of insured to the defendant of March, 1932, is urged by defendant as evidence that it did, also that the insured did not "either during 1930 and up to March 15, 1932, consider his then total disability would be continuous for the rest of his life." The Court of Appeals has held that this letter was written under a mistake of law and fact as to the meaning of total and permanent disability as used in the policies. Under the circumstances this letter is not suffi-

cient to vitiate previous information received by defendant and serve as showing that the insured's total and permanent disability had terminated. We base no finding upon the supposition, but it is not pure speculation that would conclude that insured was led to believe, by the representatives of the company, that going back to work of itself was proof of non-total disability. In a letter (Defendant's Exhibit 14) written to insured by the company on November 28, 1930, they state that total disability means disability "of such an extent that the insured is prevented thereby from engaging in any occupation or performing work of any kind for compensation—." The company's agent, Mr. Bradley, testified that shortly before the insured wrote the letter he told the insured that if he returned to work the company would terminate his disability payments. Mr. Bradley was undertaking to advise the insured of his rights under the policies. The policies feature a statement soliciting insured's reliance upon the insurer and its agents for information and guidance in case of a claim under the policy. Laymen are likely to misunderstand the meaning of the words total and permanent disability as used in insurance policies. Parks v. Maryland Casualty Company, 230 Mo.App. 383, 91 S.W.2d 1186. It is questionable if the understanding of the insured was promoted by the acts of the company. While defendant's conduct did not serve to confer upon the insured a right which he did not otherwise possess, nevertheless, the conduct of the company did not make the company's duty to perform faithfully its contract obligation any less real or imperative. Ætna Life Insurance Co. v. Moyer, 3 Cir., 113 F.2d 974, loc. cit. 980. That the insured was mistaken in the conclusions he drew as to his rights under the policy by virtue of his going back to work did not prevent recovery. Ocean Accident & Guarantee Corporation v. Moore, 8 Cir., 85 F.2d 369.

Defendant's answer to plaintiff's second position is that the policies provide for two kinds of total and permanent disability benefits, one for total and actual permanent disability, and the other for total and presumptive permanent disability; presumptive permanent disability being a case where the total disability continues for a period of ninety days. Defendant's interpretation of its contract in 1930 does not appear in exact accord with its present

position. There is evidence that in 1930 defendant was taking the position that "total disability is not presumed to be permanent unless it is *present and* has existed continuously for a period of three full months." (See Defendant's Exhibit 14). In the case of Jones v. Equitable Life Assurance Society, 177 Tenn. 644, 152 S.W. 2d 249, 250, cited by the defendant in support of this contention, with the observation that "the terms of the policy were like those here involved," the court took the following view of the policy terms under consideration: "We think that counsel for the complainant properly called this an evidentiary provision and we agree with counsel that total permanent disability may be shown otherwise than by reliance on this presumption. * * * And we think that a * * * wholly disabling disease or affliction, which medical testimony showed to be wholly and permanently disabling, would entitle the insured to the benefits in question, whether it had persisted three months or not, if due proof was seasonally furnished the insurer."

Defendant's division of permanent disability into actual permanent and presumptive permanent will not free it from liability in this case, because, first, we believe the evidence shows due proof was made of actual total and permanent disability of a continuing nature to cover the period involved, and, second, the payment of disability benefits was because of the total and permanent disability of insured found to exist, and if defendant elected to pay the benefits on the basis of the ninety-day clause as now contended, the fact remains the condition creating liability was total and permanent disability, and defendant received no knowledge as to the disability of insured ceasing to be total and permanent during the period involved.

### Findings of Fact.

The findings of fact heretofore made and entered in this cause on December 31, 1942, continue to be and remain findings of fact in this cause and in addition thereto the court finds:

1. The defendant company refused to insure the insured in December, 1920, because of heart impairment.

2. The defendant company in November, 1921, issued the policies here in suit, but charged a higher premium for each thousand dollars of insurance because of insured's heart impairment and his rating as a sub-standard risk.

3. The insured became totally and permanently disabled because of heart disease on May 29, 1930, and furnished to the defendant company in October, 1930, due proof of such total and permanent disability on blanks furnished by defendant company.

4. The information contained in the proofs of loss furnished to defendant company in October, 1930, together with the information theretofore acquired by defendant company, as to the physical condition of insured and the progress of his heart ailment since 1920, was reasonably sufficient for defendant to have knowledge that insured's physical condition of total disability was a continuing and permanent state and would grow progressively worse in all probability.

5. The proof of total and permanent disability submitted under the policies in suit, in October 1930, when taken together with all information then known by or chargeable to the defendant company, gave said company the essential facts upon which its liability under the policies here in suit would depend, and the probability that such total and permanent disability of insured from the heart disease then existing would continue and grow progressively worse during the remainder of insured's life.

6. The defendant company did not receive any notice or knowledge subsequent to October, 1930, that the insured's condition of total and permanent disability had changed in character to a condition of non-total or non-permanent disability.

7. The defendant company, through the agent who assisted the insured, in presenting claim for total and permanent disability in October, 1930, and who thereafter delivered disability checks to the insured, knew after March 15, 1932, and to May 18, 1939, that insured was a sick man; that he had a cot at his office and had daily rest periods during which insured was not to be disturbed.

### Conclusions of Law.

All conclusions of law entered in this cause by the court on December 31, 1942, remain conclusions of law in this case, except Conclusion VIII, which Conclusion of Law is re-entered as herein (III) modified.

## I.

Under the terms and provisions of the policies here in suit, after proof of total and permanent disability has once been given, an insured is entitled to recover the disability benefits as provided in said policy "during the continuance of such total and permanent disability" without further or additional proof.

## II.

The proofs of disability submitted to the defendant company under the policies in suit in October, 1930, related to the disability which had its onset on May 29, 1930, and which proofs of loss, taken together with all other information then known by, or chargeable to the defendant company were sufficient to serve as due proof to defendant of the then total and permanent disability of insured under the terms and provisions of the policies in suit, and that such due proof, when taken together with information known by or chargeable to defendant from said time and until 1939, was sufficient to serve under the circumstances as proof of total and permanent disability of the insured within the meaning of the policies in suit, continuing for the period between February 29, 1932, and May 18, 1939.

## III.

Plaintiffs are entitled to have judgment against defendant for the amount sued for less Three Hundred Forty-six and 75/100 Dollars ($346.75) together with interest on the net principal so computed from February 24, 1940.