EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. MERCANTILE–COMMERCE BANK & TRUST CO. et al.

No. 13167.

Circuit Court of Appeals, Eighth Circuit.

June 4, 1946.

Rehearing Denied July 17, 1946.

Lon O. Hocker and Orville Richardson,
both of St. Louis, Mo. (James C. Jones and
James C. Jones, Jr., both of St. Louis, Mo.,
L. D. Fitzgerald, of New York City, and
Jones, Hocker, Gladney & Grand, of St.
Louis, Mo., on the brief), for appellant.

William H. Armstrong, of St. Louis, Mo.
(Thomas H. Cobbs and Cobbs, Logan, Roos
& Armstrong, all of St. Louis, Mo., on the
brief), for appellees.

Before GARDNER, JOHNSEN, and
RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is by an insured's executors,
on two life-insurance policies, under Missouri law, to recover payment of benefits
from March, 1932, to April, 1939, for the
insured's total and permanent disability,
and return of premiums for that period,
which he was entitled to have had waived.
From a judgment for the amount of the
benefits and the premiums, D.C., 59 F.Supp.
787, the insurer has appealed.

The case has been here on a previous
appeal, 143 F.2d 397, in which we upheld
a finding by the trial court that the insured
had been totally and permanently disabled
during the period involved. Other findings
and conclusions not of present importance
were also sustained, but we reversed and
remanded the case for findings, conclusions, and resulting judgment, on the question whether the proof of disability submitted by the insured in 1930, after his total and permanent disability began, and
which the insurer had accepted and recognized as sufficient for benefit-payments and
premium-waivers from 1930 to March,
1932, would support his right to such payments and waivers for his continuing disability through the period in suit. The
trial court had not passed upon that question but had disposed of the case on another theory, which we regarded as erroneous.

It is necessary here only to discuss the insurer's contention that the holding of the trial court after the remand, that the initial proof was legally sufficient to support the insured's right to continued payments and waivers, is clearly erroneous. The basis of the insurer's argument is that the proof did not show that the disability was reasonably certain to continue for the remainder of the insured's life and hence was insufficient.

The proof of 1930 consisted of forms furnished by the insurer and executed by the insured and his attending physicians. To the inquiry "State date you expect to resume some business duties," the insured had answered "Have no idea." To a similar question in the medical forms as to when the insured would be "able to resume any business," his two doctors had both answered "Do not know." To the question whether the total disability was only temporary, one doctor had answered "Probably" and the other "Don't know." To the further question "Is it possible that he will be prevented for life from following ANY occupation?" one doctor had answered "Possibly" and the other "Yes." The proof also contained the information that the insured had had a complete heart-block ever since 1917 and that at the time of his disability in 1930 he had developed Adams-Stokes attacks. The insurer in fact had known of the existing heart-block from the time it wrote the policies, because it originally rejected the insured's application for that reason but later agreed to issue the insurance on a higher-premium basis.

It will be noted that the proof did not purport to fix a date beyond which the disability would not extend (if the fixing of such a date could at all have had any significance except as an expression of medical opinion). Nor was there anything else in the proof from which the insurer could then say that the disability would cease at a certain time. And when the insurer accepted and recognized the proof as establishing a covered disability under the policies, it could not nor did it declare that March, 1932, would mark the limit of its liability on the proof submitted. Again, when the insurer cut off benefit-payments and premium-waivers in 1932, it did not do so on the basis that this date was as far as the proof legally could support the disability, but the cut-off was made only because the insured, under the erroneous impression that if he performed any of his former duties his right to disability-benefits ceased, fair-mindedly informed the insurer that he was attempting to carry on part of his previous work and indicated that he assumed that he therefore was not entitled to receive further benefits.

The point that is here important is that the insurer accepted and recognized the insured's initial proof as sufficient to establish a covered disability. Under the terms of the policies, as we shall presently discuss, such a disability was required to be regarded as a total and permanent one unless it thereafter ceased to be total.

The policies provided that disability benefits should be "effective upon receipt of due proof, before default in the payment of premium, that the Insured became totally and permanently disabled by bodily injury or disease after this policy became effective and before its anniversary upon which the Insured's age at nearest birthday is 60 years"; that all premiums would be waived "falling due after the receipt of such proof and during the continuance of such total and permanent Disability"; that benefits in specified amounts would be paid, "the first payment to be payable upon receipt of due proof of such Disability and subsequent payments monthly thereafter during the continuance of such total and permanent Disability"; that "Total Disability shall be presumed to be Permanent when it is present and has existed continuously for not less than three months"; that the insurer should have the right "at any time or times during the first two years after receipt of such proof of disability, but thereafter not more frequently than once a year, to require proof of the continuance of such total disability"; and that, if the insured should "fail to furnish satisfactory proof thereof," or if it should appear at any time that the disability was no longer total, no further premiums would be waived or benefits paid "on account of such disability."

These provisions reasonably would seem to have been intended to mean that the

insured would be entitled to benefit-payments and premium-waivers for total and permanent disability occurring before age 60; that the payments and waivers should become effective upon receipt of due proof of the existence of such a disability; that for these purposes proof that total disability had existed for not less than three months and was still present was required to be accepted by the insurer as proof of permanent disability and would entitle the insured to continuous benefit-payments and premium-waivers thereafter, unless the disability should cease to be total, or unless the insured should fail to furnish proof of its continuance at any time that the policy authorized the insurer to make request for such subsequent proof.

We recognized in our previous opinion, 143 F.2d at page 401, that the initial furnishing of proper proof of disability is, under Missouri law, a condition precedent to legal liability under such a policy-provision as is here involved. But, in its relation to the other provisions of the policies, which have been set out above, once a proof of disability has been furnished, which is sufficient to give rise to a right to benefit-payments and premium-waivers, the condition precedent or foundation of liability for the disability involved must be held to have been legally met. As we have pointed out, the language of the policies makes benefits "payable upon receipt of due proof of such Disability and * * * monthly thereafter during the continuance of such total and permanent Disability," and waives premiums "falling due after the receipt of such proof and during the continuance of such total and permanent Disability." The only disability for which the insured was entitled to payments and waivers was a total and permanent one, but the insurer was required to accept proof of total disability, which had existed for not less than three months and was still present, as sufficient proof of permanent disability, so long as it remained total.

The insurer here, as we have pointed out, accepted and recognized the initial proof as sufficient to establish covered disability, and—to repeat—that disability, so far as the policies were concerned, was a total and permanent one while its character remained unchanged. Initial proof of disability having been furnished and recognized as sufficient to give rise to liability for benefit-payments and premium-waivers, the legal foundation for the obligation to make such payments and waivers was thereby established "during the continuance of such total and permanent Disability." The only other proof which the policies required the insured to furnish was proof of "the continuance of such total disability," at such times as the policies permitted the insurer to make request for such subsequent proof. No request for subsequent proof or failure to comply with it is here involved.

What we have said requires affirmance of the judgment. It is not necessary therefore to discuss the contentions of the insurer in relation to the other findings and conclusions of the trial court. We may add, however, that the evidence sufficiently supports findings 4 and 5, 59 F.Supp. at page 793, and that these findings also would require affirmance of the judgment.

A final contention is entitled to mention. The insurer has argued that the trial court erred in overruling its motion for leave to amend its answer, to allege as a new defense that the insured had abandoned and relinquished his right to benefits under the policies for the period in suit. There was no error in the denial of the motion. The case had been remanded "for limited purposes" only, 143 F.2d at page 405, and not for general retrial. In addition, the facts relied upon to establish abandonment had been claimed on the first trial to constitute waiver, estoppel, and laches, and each of these defenses had been ruled against the insurer on the previous appeal. Both the trial court and this court had recognized, on the basis of the evidence, that the insured's failure to demand benefit-payments and premium-waivers during the period here involved was due to a misapprehension or lack of knowledge as to his rights and not to any intention to relinquish them. To have been permitted thereafter to call his actions an abandonment would hardly have changed the result, and the less so in the light of the definition of the Missouri courts that

abandonment "is a fact made up of an intention to abandon, and the external act by which the intention is carried into effect." Pocoke v. Peterson, 256 Mo. 501, 516, 165 S.W. 1017, 1021. See also St. Louis Dairy Co. v. Northwestern Bottle Co., Mo.App., 204 S.W. 281, 283; Everhart v. State Life Ins. Co., 6 Cir., 154 F.2d 347, 356; 1 Words and Phrases, Perm. Ed., p. 39 et seq.

Affirmed.